A98A1363, A98A1939. BROWN v. NORTH AMERICAN SPECIALTY INSURANCE COMPANY; and vice versa.
(508 SE2d 741)

ANDREWS, Chief Judge.

Grant Brown was killed and the aircraft he was piloting was destroyed when he ran out of fuel and crashed while attempting to land in low visibility weather conditions at the Fulton County Airport on November 27, 1994. North American Specialty Insurance Company, which insured the aircraft against accidental damage, refused to pay for the loss of the aircraft. North American contended that the insurance policy excluded coverage because Brown was not licensed and qualified to pilot the aircraft in the weather conditions prevailing during the flight. The trial court agreed, granted summary judgment in favor of North American, and the representative of Brown's estate appeals in Case No. A98A1363. As set forth below, we find factual issues remain on the coverage issue and reverse the grant of summary judgment in favor of North American.

In related Case No. A98A1939, North American appeals from the trial court's denial of its post-judgment motion seeking the award of attorney fees and costs under OCGA § 9-15-14. We find no error and affirm the trial court's refusal to award attorney fees and costs.

### Case No. A98A1363

1. North American based its refusal to pay on language in the policy which it contends excludes coverage for damage to the aircraft under the facts of this case. The Pilot Requirements Endorsement to the policy states in part: "This policy is not in effect while the aircraft is in flight or in motion unless the pilot of the aircraft meets all the requirements specified [herein] and in Section 4 of the Policy Provisions. . . ." The relevant provisions of Section 4, denominated "Pilot Requirements," provide as follows: "This section determines who may operate the aircraft. . . . By accepting the policy, you have agreed that the policy is in effect only if (1) the person operating the aircraft meets the 'Pilot Requirements' outlined in this section and in [the Pilot Requirements Endorsement]." Section 4 of the policy further provides under "Pilot Requirements" that: "The pilot must be licensed and qualified under Federal, State and local laws and regulations for all segments of the flight involved."

Brown had a valid private pilot certificate issued by the Federal

Aviation Administration (FAA), which licensed him to operate the twin-engine aircraft involved in the crash. However, Brown's certificate contained a limitation stating that, as to multi-engine aircraft, he was rated for visual flight rules (VFR) only. VFR refers to FAA regulations governing flight by visual references outside the aircraft under certain minimum weather conditions, visibility requirements, and other rules. FAA Visual Flight Rules, 14 CFR § 91.151 et seq. (1994). It is undisputed that, at the time of the crash, Brown was flying in weather conditions and visibility which were below the minimums for use of VFR and which required the use of instrument flight rules (IFR). IFR refers to FAA regulations governing flight without sufficient visual references outside the aircraft because of weather conditions that permit less flight visibility than the minimum requirements for VFR. FAA Instrument Flight Rules, 14 CFR § 91.167 et seq. (1994). An instrument rating included on an FAA certificate to operate an aircraft indicates that the pilot has undergone additional training that qualifies the pilot to operate the aircraft in IFR weather conditions by reference to instruments inside the aircraft. FAA Requirement for Certificates, Ratings, and Authorizations, 14 CFR § 61.3 (e); Instrument Rating Requirements, 14 CFR § 61.65 (1994). Although Brown's pilot certificate indicated an instrument rating for single-engine aircraft, it contained a "VFR ONLY" limitation for operation of multi-engine aircraft, so his certificate did not include an instrument rating for the type of aircraft he was flying at the time of the crash.

Brown's flight originated at the Pennridge Airport in Pennsylvania, and his planned destination was the Covington Airport near Atlanta. In filing his flight plan, Brown estimated the flight would take about three and a half hours and that he had four and a half hours of fuel on board. According to FAA and National Transportation Safety Board (NTSB) records, Brown received two pre-flight weather briefings. Although the briefings indicated there were IFR and VFR weather conditions along Brown's intended flight path and IFR conditions in the Atlanta area, the second briefing, given about 45 minutes before take-off, included a forecast that the weather was expected to improve to VFR conditions at Brown's destination in the Atlanta area. The forecaster warned Brown, however, that he was skeptical of the forecast for improved conditions at his destination. An amended weather forecast for the Atlanta area was issued at 12:38 p.m. about 20 minutes before Brown took off, which forecasted IFR weather conditions throughout the Atlanta area for the remainder of the afternoon and early evening. There is no evidence that Brown requested or received the amended forecast prior to taking off.

Despite lacking an instrument rating for the twin-engine aircraft he was piloting, Brown filed and received clearance for an IFR

flight plan. Brown took off at about 1:00 p.m. in VFR weather conditions, but two minutes into his flight he reported that he had encountered IFR weather conditions. The record supports the conclusion that Brown encountered both IFR and VFR weather conditions along his flight path toward the Atlanta area. At 4:36 p.m., as he was approaching the Atlanta area in weather conditions he reported as "occasional broken," Brown requested and received additional weather information from the Atlanta Air Route Traffic Control Center. FAA records of this communication indicate that Brown was made aware at this point that IFR weather conditions still prevailed in the Atlanta area at airports near his Covington Airport destination and at the Athens Airport east of Atlanta. The Traffic Control Center informed Brown that aircraft had made successful approaches into the nearby Fulton County Airport, but that the last six to eight aircraft had been unsuccessful in attempting to land at the nearby Peachtree DeKalb Airport. No weather information was available for the uncontrolled Covington Airport. The affidavit of a certified meteorologist filed in support of North American's motion for summary judgment shows that, during the course of Brown's flight, various other airports in the southeast were reporting VFR weather conditions including Knoxville and Tri-Cities in eastern Tennessee, Wilmington in coastal North Carolina, and Myrtle Beach and Charleston in coastal South Carolina.

Brown told the Traffic Control Center that he would make one attempt to land at the Covington Airport and, if he was not successful, he would divert to the Fulton County Airport. Shortly thereafter, Atlanta Approach Control issued Brown missed approach instructions for the Covington Airport and the weather for Fulton County. After Brown missed his approach and was unable to land at the Covington Airport in IFR weather conditions, he was issued directions to the Fulton County Airport. While inbound to the Fulton County Airport, Brown declared a fuel emergency advising that he had about 15 to 20 minutes of fuel remaining. Thereafter, Brown missed two approaches to the Fulton County Airport, reporting that he was unable to see the runway. At about 6:00 p.m., Brown ran out of fuel and crashed while attempting another approach at the Fulton County Airport in IFR weather conditions.

(a) Brown's estate claims that the trial court erred in concluding that no insurance coverage existed because, under the provisions of OCGA § 33-24-30, North American was prohibited from excluding or denying coverage on the basis that Brown violated civil air regulations. Subsection (a) of § 33-24-30 provides that: "No policy of insurance issued or delivered in this state covering any loss, expense, or liability arising out of the ownership, maintenance, or use of an aircraft shall exclude or deny coverage because the aircraft is operated

in violation of civil air regulations pursuant to federal, state, or local laws or ordinances." However, subsection (b) of this Code section further provides in part that: "This Code section does not prohibit the use of specific exclusions or conditions in any such policy which relate[ ] to . . . [c]ertification of a pilot in a stated category by the Federal Aviation Administration."

The policy exclusion at issue, which provides that the pilot of the insured aircraft must be "licensed and qualified under Federal . . . laws and regulations for all segments of the flight involved," relates to FAA certification and rating of the pilot to operate the insured aircraft. FAA Requirement for Certificates, Ratings, and Authorizations, 14 CFR § 61.3 (1994). Under FAA regulations, ratings like those at issue (instrument rating or VFR only rating) are considered a part of the pilot certificate which sets forth special conditions, privileges, or limitations on the pilot's operation of the aircraft. FAA General Definitions, 14 CFR § 1.1 (1994). Accordingly, the exclusion at issue was valid under the provisions of OCGA § 33-24-30 (b). *Farmers & Merchants Bank v. Ranger Ins. Co.*, 125 Ga. App. 166, 167 (186 SE2d 579) (1971).

(b) Although the exclusion was valid under § 33-24-30, we conclude under the facts of this case that the trial court erred by declaring as a matter of law that no coverage existed.

The exclusion relied upon by North American provides that the insurance policy is not in effect while the aircraft is in flight or in motion unless the requirement is satisfied that the pilot of the aircraft is licensed and qualified under federal, state, and local laws and regulations for all segments of the flight involved. Although Brown had an FAA pilot certificate to operate the insured aircraft, the certificate did not have an instrument rating which would have licensed and qualified him under FAA regulations to operate the insured aircraft in IFR weather conditions. Nevertheless, the record shows that Brown flew the aircraft in IFR weather conditions for which he was not FAA licensed or qualified during portions of his flight, including the final portion of the flight into the Atlanta area during which he crashed and the aircraft was destroyed. North American claims that, since Brown was not licensed and qualified under FAA regulations to operate the aircraft during all segments of the flight in which he encountered IFR weather conditions, there was no coverage for the loss incurred when the aircraft crashed.

We first consider the nature of the increased risk to which the exclusion applied in this case. The record shows that, prior to flying into IFR weather conditions in the Atlanta area, Brown flew in VFR and IFR weather conditions at various times earlier in the flight. North American apparently claims that the language of the policy excluded coverage if Brown operated the aircraft in IFR weather con-

ditions during any segment of the flight, even if no accident occurred during those earlier IFR operations. There is no evidence of an increased risk during the portions of the flight in which Brown operated the insured aircraft in VFR weather conditions for which he was licensed and qualified under FAA regulations.[1] An increased risk occurred while Brown operated the aircraft in IFR weather conditions. Considering the variable nature of the risk in this case, we conclude as a matter of policy that the exclusion did not apply to nullify coverage for Brown's entire flight simply because Brown operated the aircraft in IFR weather conditions during earlier portions of the flight in which no loss occurred. *Ga. Farm &c. Ins. Co. v. Brown*, 260 Ga. 160, 161 (390 SE2d 586) (1990).[2] Rather the coverage was only temporarily suspended during the earlier IFR segments of the flight and revived during VFR segments. " '[A] contract of insurance may be only temporarily suspended by the violation of a stipulation in the contract similar to that now before us, and may thereafter be revived, and that if no loss was caused or can be attributed to the violation of one of these conditions, the company is not relieved from liability.' " Id. at 161, quoting *Home Ins. Co. v. Johnson*, 181 Ga. 139, 144 (182 SE 41) (1935); 5 Appleman, Insurance Law & Practice, §§ 2941, 2942, 2944 (1970). Accordingly, the fact that Brown operated the aircraft in and out of IFR weather conditions without incident as he approached the Atlanta area does not control our consideration of how the exclusion applied to the crash in IFR weather conditions in the Atlanta area — conditions Brown's estate claims were unexpected.

Next, we consider the application of the policy exclusion to the facts of this case. Under the facts presented, we conclude the exclusion is unclear and requires construction as it applies to Brown's decision to operate the aircraft in the IFR weather conditions prevailing in the Atlanta area where he crashed attempting to land. "Three well known rules used in the construction of insurance contracts apply. Any ambiguities in the contract are strictly construed against the insurer as drafter of the document, *Hulsey v. Interstate Life &c. Co.*, 207 Ga. 167 (60 SE2d 353) (1950); any exclusion from coverage sought to be invoked by the insurer is likewise strictly construed,

---

[1] We recognize the possibility under other circumstances of showing that a loss incurred during VFR flight was caused in whole or in part by the increased risk of a noninstrument-rated pilot flying in IFR weather conditions. For example, a pilot not rated for instrument flight could become disoriented or lose control of the aircraft in IFR weather conditions and thereafter fly into and crash in VFR conditions.

[2] By contrast, a similar exclusion applied to the lack of an FAA-required pilot certificate or medical certificate would apply for the entire flight, because the increased risk would exist for the entire flight during which the pilot operated the insured aircraft without any proper certification. *Atlanta Air Fleet v. Ins. Co. of North America*, 130 Ga. App. 15, 16 (202 SE2d 192) (1973); *Grigsby v. Houston Fire &c. Ins. Co.*, 113 Ga. App. 572, 574 (148 SE2d 925) (1966).

*Travelers Indem. Co. v. Whalley Constr. Co.*, 160 Ga. App. 438 (287 SE2d 226) (1981); and insurance contracts are to be read in accordance with the reasonable expectations of the insured where possible, *Cincinnati Ins. Co. v. Davis*, 153 Ga. App. 291 (265 SE2d 102) (1980)." *Richards v. Hanover Ins. Co.*, 250 Ga. 613, 615 (299 SE2d 561) (1983).

The exclusion in Section 4 of the policy required that the pilot be "licensed and qualified under Federal, State and local laws and regulations for all segments of the flight involved." Section 4 of the policy under which the exclusion appears makes clear that "[t]his section determines who may operate the aircraft. . . ." The policy does not explicitly address the requirement that the pilot be licensed and qualified for the flight under the applicable law, but a reasonable construction of that requirement is that it was intended to limit operation of the insured aircraft to those persons doing so in compliance with the applicable FAA regulations governing pilot certification, rating and operation of the aircraft.

Under FAA regulations in 14 CFR Part 61, governing pilot certificate and rating, Brown did not have a certificate with an instrument rating to operate the insured aircraft in the IFR weather conditions prevailing at the time of the crash. Nevertheless, FAA regulations in 14 CFR Part 91, setting forth general rules for operating aircraft, provide that "[i]n an in-flight emergency requiring immediate action, the pilot in command may deviate from any rule of this part to the extent required to meet that emergency." 14 CFR § 91.3 (b) (1994). Part 91 also contains the rules governing the operation of an aircraft in VFR and IFR weather conditions. Based on the language of the policy and the applicable federal regulations referenced by the policy, we conclude that Brown could have reasonably expected that the aircraft would remain insured while he operated it in IFR weather conditions while attempting to land, if he did so only to the extent required to meet an in-flight emergency which could not have been reasonably avoided by compliance with other FAA regulations. This conclusion recognizes the reasonable expectations of the VFR pilot that insurance coverage be maintained when unexpected IFR weather conditions are confronted, and "the common-sense conclusion that neither the insurer nor the VFR pilot should expect coverage to apply where the aviation mandates are disobeyed by acts known by all VFR pilots and aviation insurers to increase the risk of loss."[3] Michael G. McQuillen, The Deception About the Inception Rule: Coverage for VFR Pilots in IFR Conditions, 60 J. Air L. & Com.

---

[3] Of course, evidence of acts in violation of FAA regulations which increased the risk of loss during a flight are relevant to the issue of insurance coverage only to the extent that they caused or contributed to the actual loss at issue. *Brown*, 260 Ga. at 161.

179, 220 (1994).[4]

For example, a jury could conclude that, based on pre-flight weather briefings, Brown reasonably expected he would encounter VFR weather conditions upon his arrival in the Atlanta area where he planned to land; that he unexpectedly encountered IFR weather conditions in the Atlanta area; that he had no reasonable alternative but to attempt to land at an Atlanta area airport in IFR weather conditions, and that, considering all the relevant facts and FAA regulations, this constituted an unavoidable in-flight emergency which allowed Brown to operate the aircraft in IFR weather conditions without an instrument rating. A jury could also conclude to the contrary that, considering the relevant facts and FAA regulations, there was no unavoidable in-flight emergency. For example, a jury could conclude that it was not reasonable for Brown to expect VFR conditions in the Atlanta area; that he could have reasonably obtained updated weather forecasts before or during the flight showing continuing IFR weather conditions in the Atlanta area, and that, upon learning of IFR weather conditions in the Atlanta area during the flight, he could have reasonably avoided those conditions by diverting from his flight plan and landing at an airport where VFR weather conditions prevailed. Because factual issues remain on the present record, the question of insurance coverage is for a jury to decide.

### Case No. A98A1939

2. The trial court denied North American's post-judgment motion seeking the award of attorney fees and expenses pursuant to OCGA § 9-15-14 (a) and (b) for frivolous litigation. "A decision under subsection (a) must be sustained if any evidence supports the trial court's decision, and a decision under subsection (b) must be sustained unless the trial court has abused its discretion." *Harkleroad & Hermance, P.C. v. Stringer*, 220 Ga. App. 906, 907 (3) (472 SE2d 308) (1996). Under these standards, we find no error in the denial of the motion.

*Judgment affirmed in Case No. A98A1939. Judgment reversed in Case No. A98A1363. Johnson, P. J., and Senior Appellate Judge Harold R. Banke concur.*

---

[4] We decline, as urged by the insured, to adopt the so-called "inception rule" under which Brown's entire flight would be characterized as VFR because he took off in VFR weather conditions and flew in those conditions for a few minutes at the inception of the flight. See McQuillen, supra, for a discussion of cases in other jurisdictions applying the "inception rule" and variations thereof.

DECIDED NOVEMBER 3, 1998 —
RECONSIDERATION DENIED NOVEMBER 17, 1998

*Andre, Blaustein & Green, Edmund J. Novotny, Jr., Charles R. Bridgers*, for appellant.

*Smith, Howard & Ajax, Donald R. Andersen, Matthew L. Hilt*, for appellee.