A08A0783. ZURICH AMERICAN INSURANCE COMPANY
v. BEASLEY et al.
(666 SE2d 83)

RUFFIN, Presiding Judge.

Following an automobile collision, Melvin Beasley sought uninsured motorist benefits from Zurich American Insurance Company ("Zurich"), which provided a policy for the vehicle Beasley was driving. In cross-motions for summary judgment, the parties contested the amount of coverage that Zurich provided. According to Zurich, under the renewal policy, an insured had $75,000 in unin-

sured motorist coverage. Beasley, on the other hand, argued that the policy was not a renewal policy, and thus Zurich was required to provide $1,000,000 in coverage as the insured did not reject the higher amount in writing as required by OCGA § 33-7-11 (a). The trial court agreed with Beasley, granting his motion for summary judgment and denying the motion filed by Zurich. For reasons that follow, we reverse.

A trial court properly grants summary judgment where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[1] We review, de novo, a trial court's ruling on a motion for summary judgment.[2] And, in so doing, we view the evidence in a light favorable to the nonmoving party.[3]

Viewed in this light, the record reveals that Melvin Beasley sued Salina Stewart and Christopher McDonald for injuries he sustained in an automobile collision.[4] Zurich was served a copy of the complaint as the uninsured motorist carrier for the vehicle driven by Beasley, which was owned and insured by Beasley's employer. When the employer first obtained insurance in September 2000, the policy was issued by Maryland Casualty Company, which is an underwriting company that is a wholly owned subsidiary of Zurich. And the "branch name and address" shown on the original policy listed "Zurich Group — Atlanta." The policy was renewed in September 2001 under the same policy number. The next year, however, the policy was issued under the Zurich name. On the declarations page, the policy stated that "insurance is provided by one or more of the stock insurance companies which are members of the Zurich-American Insurance Group." Although this policy was listed under a new policy number, the document indicated that it was a renewal policy. A senior account executive with Zurich testified via affidavit that the renewal policy was issued by Zurich due to "internal operational considerations not specific to this account" and that Zurich's computer database showed that the Zurich policy was a renewal of the Maryland Casualty policy. The Zurich policy was renewed again in September 2003, and this policy was in place when the collision occurred.

Beasley moved for partial summary judgment, arguing that, under OCGA § 33-7-11 (a), he was entitled to $1,000,000 in uninsured motorist benefits. Zurich also moved for partial summary judgment, maintaining that the policy provided only $75,000 in

---

[1] See OCGA § 9-11-56 (c).

[2] See *Phillips v. Govt. Employees Ins. Co.*, 288 Ga. App. 504 (654 SE2d 635) (2007).

[3] See id. at 504-505.

[4] Beasley's wife also brought suit for a loss of consortium claim. For the sake of clarity, we refer solely to Beasley.

uninsured motorist benefits. Zurich further asserted that Beasley lacked standing to seek higher uninsured motorist benefits since he is not a named insured on the policy. The trial court found that Beasley had standing to challenge the amount of uninsured motorist benefits, and it agreed with Beasley's contention that the $1,000,000 coverage applied. Thus, the court granted Beasley's motion for partial summary judgment and denied the motion filed by Zurich.

OCGA § 33-7-11 (a) (1) provides, in relevant part, that a policy default amount for uninsured motorist benefits is the same as the policy's liability limits — in this case $1,000,000 — unless the insured affirmatively elects a lesser amount.[5] However, this statute also provides that

> [t]he [uninsured motorist] coverage required under paragraph (1) of this subsection shall not be applicable where any insured named in the policy shall reject the coverage in writing. The coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with a policy previously issued to said insured by the same insurer. *The amount of coverage need not be increased in a renewal policy from the amount shown on the declarations page for coverage existing prior to July 1, 2001.* The amount of coverage need not be increased from the amounts shown on the declarations page on renewal once coverage is issued.[6]

Thus, this case turns on whether the policy issued by Zurich in September 2003 was a renewal of policy originally issued by Maryland Casualty in September 2001. "An insurance policy is simply a contract, the provisions of which should be construed as any other type of contract."[7] As such, insurance policies are governed by the rules of contract construction, including the rule that words in the policy are to be given their usual and customary meaning.[8] Here, the original policy issued by Maryland Casualty indicates that it is a new policy of insurance. However, the subsequent policies — including the first issued by Maryland Casualty and the two policies issued by Zurich — indicate on the face of the policy that they are renewal policies. And where the policy expressly provides that it is intended

---

[5] See OCGA § 33-7-11 (a) (1); *Tice v. American Employers' Ins. Co.*, 275 Ga. App. 125, 127-128 (619 SE2d 797) (2005).

[6] (Emphasis supplied.) OCGA § 33-7-11 (a) (3).

[7] (Punctuation omitted.) *Certain Underwriters at Lloyd's of London v. Rucker Constr.*, 285 Ga. App. 844, 848 (2) (648 SE2d 170) (2007).

[8] See *Cuyler v. Allstate Ins. Co.*, 284 Ga. App. 409, 412 (3) (643 SE2d 783) (2007).

as a renewal, this language should be given deference in determining the parties' intent.[9] Furthermore, the subsequent policies serve the purpose of a renewal contract, under the commonly understood meaning, by continuing the obligation to insure.[10] The fact that the name of one of the parties may have changed is not dispositive.[11] Nor does the fact that the policy has a different number or different endorsements automatically render the subsequent policy a new rather than a renewal policy.[12] Under these circumstances, we conclude that the policy Zurich issued in 2003 was a renewal contract.[13] Accordingly, the amount of coverage for uninsured motorist benefits is not the $1,000,000 liability limit, but $75,000,[14] and the trial court erred in concluding otherwise. In view of this holding, we need not address Zurich's argument that Beasley lacked standing.

*Judgment reversed. Andrews and Bernes, JJ., concur.*

DECIDED JULY 3, 2008 —
RECONSIDERATION DENIED JULY 24, 2008 — 

*Brannen, Searcy & Smith, Jordon D. Morrow*, for appellant.
*H. Lehman Franklin, Jr.*, for appellees.

---

[9] See *Borders v. Global Ins. Co.*, 208 Ga. App. 480, 483 (2) (430 SE2d 854) (1993).
[10] See *Livoti v. Aycock*, 263 Ga. App. 897, 903-904 (2) (590 SE2d 159) (2003).
[11] See id.
[12] See *Borders*, supra.
[13] See id. at 483-484.
[14] See OCGA § 33-7-11 (a) (3); *McKinnon v. Progressive Bayside Ins. Co.*, 278 Ga. App. 429, 431 (629 SE2d 100) (2006).