A10A1784. INFINITY GENERAL INSURANCE COMPANY
v. LITTON.
(707 SE2d 885)

PHIPPS, Presiding Judge.

Jason Litton brought an action for damages for personal injuries he sustained in an automobile accident on November 27, 2007. He claimed that he was working for his employer, JM Brick and Stone, at the time of the accident. Infinity General Insurance Company ("Infinity"), the commercial vehicle liability insurer of Jim Mendenhall d/b/a JM Brick and Stone ("Mendenhall"), answered the complaint in its own name, thereby becoming a party to the action.[1] After a jury trial, the trial court entered a judgment that Mendenhall's policy with Infinity provided $1,000,000 per person in uninsured motorist (UM) coverage. Asserting that the policy's unambiguous terms provided only $50,000 per person in UM coverage, Infinity appeals the court's denial of its motions for directed verdict and judgment notwithstanding the verdict. For the following reasons, we agree with Infinity that the court erred in denying Infinity's motions, and accordingly we reverse.

1. As an initial matter, we consider our jurisdiction over this appeal. Litton has moved to dismiss the appeal on the ground that

---

[1] See *Thompson v. Allstate Ins. Co.*, 285 Ga. 24, 25 (673 SE2d 227) (2009).

the notice of appeal was filed more than 30 days after the entry of the judgment on the jury verdict. Infinity responds that its notice of appeal was timely because it was filed within 30 days of the trial court's order on Infinity's motion for judgment notwithstanding the verdict, which Infinity filed within 30 days of the entry of the judgment.[2] We agree with Infinity that the notice of appeal was timely, and accordingly we deny Litton's motion to dismiss.[3]

2. Infinity asserts that the trial court erred in denying its motions for directed verdict and judgment notwithstanding the verdict regarding the amount of UM coverage provided by the policy between Infinity and Mendenhall that was in effect at the time of the accident.

> On appeal from the denial of a motion for directed verdict or for j.n.o.v., we construe the evidence in the light most favorable to the party opposing the motion, and the standard of review is whether there is any evidence to support the jury's verdict. However, the construction, interpretation and legal effect of a contract . . . [are] issue[s] of law which [are] subject to de novo review.[4]

The evidence showed that Infinity's predecessor-in-interest issued a commercial vehicle insurance policy to Mendenhall in 2005 (the 2005 policy). The 2005 policy was a new insurance contract that provided, inter alia, $1,000,000 per person in personal liability coverage and $50,000 per person in UM coverage. The term of the 2005 policy was one year, expiring on July 5, 2006.

On May 31, 2006, Infinity sent Mendenhall a document titled "Renewal Notice," which instructed him to make a payment by July 5, 2006 to renew his policy. Infinity, however, did not receive a payment from Mendenhall until July 18, 2006. Infinity issued a

---

[2] See OCGA § 9-11-50 (b) ("[n]ot later than 30 days after entry of judgment, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict").

[3] See OCGA § 5-6-38 (a) ("when a . . . motion for judgment notwithstanding the verdict has been filed, the notice [of appeal] shall be filed within 30 days after the entry of the order granting, overruling, or otherwise finally disposing of the motion").

[4] *Parris Props. v. Nichols*, 305 Ga. App. 734, 735 (1) (700 SE2d 848) (2010) (citation and punctuation omitted); see *Savannah Yacht Corp. v. Thunderbolt Marine*, 297 Ga. App. 104, 109 (1) (676 SE2d 728) (2009) (where appellant's argument that trial court erred in denying motion for directed verdict turned on construction of contract, which involved a question of law for the court, we review the court's ruling de novo); *Huckaby v. Cheatham*, 272 Ga. App. 746, 749 (1) (612 SE2d 810) (2005) (to the extent that the construction of a contract presented a question of law, appellate court owed no deference to trial court's legal analysis in reviewing its ruling on a motion for directed verdict or judgment notwithstanding the verdict).

policy (the 2006 policy) with a declarations page that stated that it was a "renewal with lapse" and further stated: "THIS POLICY HAS BEEN RENEWED WITH A LAPSE IN COVERAGE. Please refer to the new term dates at the top of the form." The declarations page set forth an effective policy date of July 17, 2006. It also set forth UM coverage of $50,000 per person and other coverage in the same amounts as the 2005 policy.

In July 2007, Infinity issued a policy to Mendenhall (the 2007 policy), which indicated on the declarations page that it was a renewal of the 2006 policy. It set forth UM coverage of $50,000 per person and other coverage in the same amounts as the 2006 and 2005 policies.

Litton argues that, notwithstanding the 2007 policy's statement that it provided $50,000 in UM coverage, the policy in fact provided $1,000,000 in UM coverage pursuant to OCGA § 33-7-11 (a) (1). Pertinently, that Code section requires insurance policies issued in Georgia to contain provisions for UM coverage which at the option of the insured shall be (i) not less than $25,000 per person, or (ii) equal to the policy's bodily injury liability insurance coverage, if higher than $25,000 per person.[5] It further provides: "In any event, the insured may affirmatively choose [UM] limits in an amount less than the limits of liability [for bodily injury]."[6] This Code section "was intended to make a policy's liability limits the default provision for UM coverage, unless an insured affirmatively elects UM coverage in a lesser amount."[7] But OCGA § 33-7-11 (a) (3) provides, in pertinent part, that UM coverage "need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with a policy previously issued to said insured by the same insurer." It further provides that the "amount of coverage need not be increased from the amounts shown on the declarations page on renewal once coverage is issued."[8]

Mendenhall elected less UM coverage than his liability coverage under the 2005 policy, and in subsequent years he made no further elections related to UM coverage. The parties dispute whether the 2006 policy, which Infinity issued following the lapse in coverage occasioned by Mendenhall's late payment, was a new contract of insurance or a renewal of Mendenhall's prior policy. Litton contends that the 2006 policy was a new contract, and that Mendenhall's failure to affirmatively elect lesser UM coverage in connection with

---

[5] See OCGA § 33-7-11 (a) (1) (A), (B); see also *Soufi v. Haygood*, 282 Ga. App. 593, 594 (639 SE2d 395) (2006).

[6] OCGA § 33-7-11 (a) (1) (B).

[7] *Soufi*, supra at 595 (citation omitted).

[8] OCGA § 33-7-11 (a) (3).

that policy resulted in the 2006 policy providing the default of $1,000,000 in UM coverage (equal to the bodily liability coverage provided therein); consequently, Litton contends, when the 2007 policy renewed the 2006 policy, it too provided UM coverage of $1,000,000, notwithstanding its statement to the contrary. Infinity counters that the 2006 policy was a renewal of the 2005 policy and that, pursuant to OCGA § 33-7-11 (a) (3), no additional election by Mendenhall was needed to retain the $50,000 election in UM coverage in both the 2006 and 2007 policies.

> An insurance policy is governed by the ordinary rules of contract construction. The hallmark of contract construction is to ascertain the intention of the parties. However, when the terms of a written contract are clear and unambiguous, the court is to look to the contract alone to find the parties' intent.[9]

Whether an ambiguity exists in an insurance contract is a question of law for the court.[10] An insurance contract will be deemed ambiguous only if its terms are subject to more than one reasonable interpretation.[11]

A "renewal" of an automobile insurance policy is defined in pertinent part as the "issuance and delivery by an insurer of a policy superseding at the end of the policy period a policy previously issued and delivered by the same insurer and providing no less than the coverage contained in the superseded policy."[12] The Supreme Court of Georgia has held that a lapse in coverage between the expiration of the first policy and the effective date of the superseding policy does not preclude the superseding policy from being a renewal.[13] Similarly, we have held that a policy issued by the successor-in-interest to the original insurer can be a renewal policy under this definition.[14]

In *Zurich American Ins. Co. v. Beasley*,[15] we addressed whether, for purposes of determining the amount of UM coverage, an insurance contract was a renewal of an earlier policy or a new contract of insurance. In that case, an original insurance policy had been issued

---

[9] *Park 'N Go of Ga. v. United States Fidelity & Guar. Co.*, 266 Ga. 787, 791 (471 SE2d 500) (1996) (citations and footnote omitted). See *Progressive Preferred Ins. Co. v. Brown*, 261 Ga. 837, 838 (1) (413 SE2d 430) (1992) (whether subsequent insurance policy renewed obligation of earlier policy or was a new contract depended on parties' intent).

[10] *Banks v. Brotherhood Mut. Ins. Co.*, 301 Ga. App. 101, 102 (1) (686 SE2d 872) (2009).

[11] Id. at 103 (1).

[12] OCGA § 33-24-45 (b) (2).

[13] *Progressive Preferred Ins. Co.*, supra at 839 (2).

[14] *Zurich American Ins. Co. v. Beasley*, 293 Ga. App. 8, 11 (666 SE2d 83) (2008).

[15] Id.

indicating that it was a new contract of insurance, and several subsequent policies were issued indicating on their faces that they were renewal policies. Citing the principle of contract construction that words in the policy are to be given their usual and customary meaning, we determined that, as a matter of law, the policy in effect at the time of the accident in that case was a renewal contract.[16] We explained:

> [W]here the policy expressly provides that it is intended as a renewal, this language should be given deference in determining the parties' intent. Furthermore, the subsequent policies serve the purpose of a renewal contract, under the commonly understood meaning, by continuing the obligation to insure.[17]

Under the rationale in *Zurich American Ins. Co.*, the 2006 policy at issue here was a renewal of an earlier policy of insurance, rather than a new contract of insurance. The declarations page of the 2006 policy stated twice on its face that it was a renewal.[18] It also stated on its face that it provided the same amount of coverage (including UM coverage) as the prior policy. Thus, by its terms, the 2006 policy carried forward the same obligation to insure that Infinity had under the prior policy.[19] The lapse in time between the expiration of Mendenhall's prior policy and the effective date shown on the 2006 policy does not conflict with the policy's statements that it was a renewal, because a renewal policy can begin on a date other than the expiration of the prior policy.[20]

Thus, the terms of the 2006 policy did not allow for an interpretation that it was a new contract rather than a continuation of Infinity's prior obligation to insure Mendenhall. Consequently, the language of the 2006 policy is unambiguous and controls the parties' intent.[21] Although Litton points to evidence that an employee of

---

[16] Id. at 10-11.

[17] Id. (footnotes omitted).

[18] See *Zurich American Ins. Co.*, supra at 10-11; see also *Borders v. Global Ins. Co.*, 208 Ga. App. 480, 483 (2) (430 SE2d 854) (1993).

[19] See *Zurich American Ins. Co.*, supra at 11; see also *Livoti v. Aycock*, 263 Ga. App. 897, 904 (1) (590 SE2d 159) (2003) (the term "renewal" in Georgia case law refers to a contract that continues the same obligation as an earlier contract; an obligation is renewed when the same obligation is carried forward by the new paper or undertaking, whatever it may be).

[20] See *Progressive Preferred Ins. Co.*, supra at 838-839 (2).

[21] See *Banks*, supra; *Park 'N Go of Ga.*, supra. Compare *Brannen v. Gulf Life Ins. Co.*, 201 Ga. App. 241, 242 (2) (410 SE2d 763) (1991) (finding ambiguity on the face of a policy as to whether it was to constitute a new policy, where it was stamped "duplicate" but contained a typewritten provision that it was to take the place of a prior policy and that the prior policy was rendered "void").

Infinity viewed the 2005 policy as having been cancelled, extrinsic evidence of the parties' intent cannot vary the terms of an unambiguous contract.[22]

Because, as a matter of law, the 2006 policy was a renewal of an earlier policy, Mendenhall was not required to make a new affirmative election of UM coverage to retain the $50,000 in coverage provided under the earlier policy.[23] Likewise, Mendenhall was not required to make a new election of UM coverage in the 2007 policy, which was a renewal of the 2006 policy.[24] Infinity was entitled to judgment, as a matter of law, that the 2007 policy provided UM coverage of $50,000 per person, as indicated on the policy's declarations page, and the trial court erred in denying its motions for directed verdict and judgment notwithstanding the verdict.[25]

*Judgment reversed. Miller, P. J., and McFadden, J., concur.*

DECIDED MARCH 17, 2011 — 

*Drew, Eckl & Farnham, Stephanie F. Brown, Stevan A. Miller,* for appellant.
*Miller, Cowart & Howe, Wallace Miller III, Robert B. Sullivan,* for appellee.

---

[22] *Simpson v. Pendergast*, 290 Ga. App. 293, 296 (1) (659 SE2d 716) (2008).

[23] See OCGA § 33-7-11 (a) (3); *Soufi*, supra at 595-596.

[24] See OCGA § 33-7-11 (a) (3); *Soufi*, supra.

[25] See *Savannah Yacht Corp.*, supra at 111 (1) (reversing judgment in part where jury's verdict was inconsistent with unambiguous terms of contract and trial court erroneously denied motion for directed verdict on contract issue); *Huckaby*, supra at 751 (1) (finding that trial court erred in failing to direct verdict consistent with unambiguous terms of contract); *Indian Trail Village v. Smith*, 152 Ga. App. 301, 302-303 (1), (2) (262 SE2d 581) (1979) (reversing denial of motions for directed verdict and judgment notwithstanding the verdict where application of rules of contract construction required, as matter of law, interpretation of contract inconsistent with jury verdict).

