A11A1972. ROBERSON et al. v. LEONE.
(726 SE2d 565)

DILLARD, Judge.

Following an automobile collision, Era Roberson and her husband, Justin Roberson (collectively "plaintiffs"), sued Robert Leone for personal-injury damages and sought uninsured motorist ("UM") benefits from State Farm Mutual Automobile Insurance Company ("State Farm"), which provided a policy for the vehicle Era Roberson was driving at the time of the accident. State Farm moved for summary judgment, arguing that the subject policy was a renewal

---

policy, and thus, its UM coverage did not apply because the applicable UM limits of $25,000 were less than Leone's liability policy limits of $100,000. Plaintiffs countered that the policy was a new policy, and therefore, because plaintiffs did not select the UM limits in writing as required by OCGA § 33-7-11 (a), State Farm was obligated to provide UM coverage equal to its liability limits of $1,000,000. The trial court granted summary judgment in State Farm's favor, and plaintiffs appeal, arguing that genuine issues of fact exist as to whether the subject policy is new or a renewal. For the reasons set forth infra, we affirm.

At the outset, we note that "[s]ummary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law."[1] In addition, "[a] de novo standard of review applies to an appeal from a grant or denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant."[2]

So viewed, the record shows that at least as early as July 1, 2001, State Farm issued a policy to Wendell Roberson Farms, a company owned and operated by Justin and Era Roberson, insuring numerous vehicles and farm equipment owned by the company. The policy, which was designated by the number F040295-E24-11, was renewed on November 24, 2001, at which time the amount of UM coverage was increased from $15,000 for bodily injury per person to $25,000 per person. Thereafter, the policy was renewed on November 24 of each subsequent year through 2004.

In each of those years, the vehicle schedule forms, which provided the details of the policy's coverage, indicated that the policy was issued to Wendell Roberson Farms, identified the same persons insured, and indicated the same amounts of coverage, including UM coverage. Additionally, in every version of the policy from 2001 through 2003, a representative of Wendell Roberson Farms executed a form acknowledging that it had selected the minimum limits of UM coverage. And although the premiums varied from year to year as vehicles were added or deleted from the policy, the only other notable change to the policy occurred in November 2004 when the policy number changed to F040295-11C and, noting this change, the declarations page stated that the current policy "Replaced policy number F040295-11B."

---

[1] *Ellis v. Ingle*, 306 Ga. App. 674, 675 (703 SE2d 104) (2010); *see* OCGA § 9-11-56 (c).
[2] *Ellis*, 306 Ga. App. at 675.

On December 9, 2004, Era Roberson was driving in downtown Albany when her SUV, which was insured under the subject policy, was violently struck from behind by Leone's large pickup truck. As a result of the accident, Roberson sustained serious injuries, and therefore, she and her husband filed a personal-injury action against Leone to recover damages. In their complaint, the plaintiffs also named State Farm as a defendant, claiming that State Farm was liable for Leone's negligence to the extent that Leone was "underinsured or uninsured" for the accident.

Ultimately, Leone's insurer paid the plaintiffs its policy limits of $100,000 as a settlement on Leone's behalf. Thereafter, State Farm and Leone moved for summary judgment,[3] arguing that the applicable UM limits of $25,000 per person, based on plaintiffs' selection of same, were less than Leone's liability limits of $100,000, and thus, UM coverage was not applicable.[4] Plaintiffs countered, arguing that the subject policy was a new policy rather than a renewal and that because plaintiffs never selected the minimum UM limits for this new policy, State Farm's UM limits were equal to its liability limits of $1,000,000 and were applicable. The trial court agreed with State Farm and granted summary judgment in its favor. This appeal follows.

Plaintiffs contend that the trial court erred in granting summary judgment in favor of State Farm, arguing that genuine issues of fact exist as to whether the subject policy is new or a renewal and, consequently, whether the policy's UM limits were equal to its liability limits of $1,000,000, pursuant to OCGA § 33-7-11 (a). We disagree.

OCGA § 33-7-11 (a) (1) of the UM statute provides, in relevant part, "that a policy default amount for uninsured motorist benefits is the same as the policy's liability limits [in this case $1,000,000] unless the insured affirmatively elects a lesser amount."[5] Importantly, the

---

[3] Despite the fact that Leone's insurer paid its liability limits to plaintiffs and received a Limited Liability UM release in return, Leone's insurer also moved for summary judgment on the same grounds as State Farm in order to protect Leone from a potential subrogation claim by State Farm. For the same reasons, Leone also filed an appellee's brief in this appeal.

[4] See State Farm Mut. Auto. Ins. Co. v. Adams, 288 Ga. 315, 316 (702 SE2d 898) (2010) ("[T]o determine whether a motor vehicle is underinsured, and thereby an uninsured motor vehicle, one must determine whether the injured party's uninsured motorist coverage *exceeds* the sum of the tortfeasor's full liability coverage minus payments of other claims (e.g., to other parties injured by the tortfeasor) or otherwise." (emphasis supplied)); see also OCGA § 33-7-11 (b) (1) (D) (ii) (2000).

[5] Zurich Am. Ins. Co. v. Beasley, 293 Ga. App. 8, 10 (666 SE2d 83) (2008); see also OCGA § 33-7-11 (a) (1).

statute also provides that

> [t]he [uninsured motorist] coverage required under paragraph (1) of this subsection shall not be applicable where any insured named in the policy shall reject the coverage in writing. . . . The coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with a policy previously issued to said insured by the same insurer. *The amount of coverage need not be increased in a renewal policy from the amount shown on the declarations page for coverage existing prior to July 1, 2001.* The amount of coverage need not be increased from the amounts shown on the declarations page on renewal once coverage is issued.[6]

Thus, as both plaintiffs and State Farm acknowledge, this case turns on whether the policy issued by State Farm in November 2004 was a renewal of the original policy issued to Wendell Roberson Farms or a new policy, in which the minimum UM limits of $25,000 per person applied only if they were specifically selected by the plaintiffs in writing.

In Georgia, insurance contracts are "governed by the rules of construction applicable to other contracts, and words in the policy must be given their usual and common signification and customary meaning."[7] Moreover, it is well established that "[t]he hallmark of contract construction is to ascertain the intention of the parties."[8] And when the language of an insurance policy defining the extent of the insurer's liability is unambiguous and capable of but one reasonable construction, "the courts must expound the contract as made by the parties."[9] Furthermore, "[t]he proper construction of a contract, and whether the contract is ambiguous, are questions of law for the court to decide."[10]

Turning now to an examination of the subject policy, we first note that OCGA § 33-24-45 (b) (2) defines renewal as "the issuance and delivery by an insurer of a policy superseding at the end of the policy

---

[6] OCGA § 33-7-11 (a) (3) (emphasis supplied).

[7] *Turner v. Gateway Ins. Co.*, 290 Ga. App. 737, 739 (660 SE2d 484) (2008) (punctuation omitted).

[8] *Infinity Gen. Ins. Co. v. Litton*, 308 Ga. App. 497, 500 (2) (707 SE2d 885) (2011) (punctuation omitted).

[9] *Varsalona v. Auto-Owners Ins. Co.*, 281 Ga. App. 644, 646 (637 SE2d 64) (2006) (punctuation omitted).

[10] *Clayton v. S. Gen. Ins. Co.*, 306 Ga. App. 394, 396 (702 SE2d 446) (2010) (punctuation omitted).

period a policy previously issued and delivered by the same insurer and providing no less than the coverage contained in the superseded policy . . . ."[11] And here, the subject policy met these requirements in that "[i]t was issued by the same insurer to supersede an existing policy and to extend the term of the existing policy beyond its policy period conditioned upon payment of a continuation premium according to the terms of the renewal document."[12]

Nevertheless, plaintiffs contend that the November 2004 policy was a new policy instead of a renewal, arguing that the change in the policy number from F040295-11B to F040295-11C, the change in the premium amount and vehicles insured, and the notation on the policy's declarations page that the latter number "replaced" the former creates a genuine issue of fact, preclude summary judgment on this issue. However, the mere fact that the policy has a slightly different number does not render the subject policy a new rather than a renewal policy.[13] Similarly, changes in the premium amounts and vehicles insured also do not create a new policy.[14] And furthermore, given that the term "supersede"—a term used to define a renewal policy in OCGA § 33-24-45 (b) (2)—can mean "to take the place of (something set aside or abandoned),"[15] we do not find that the policy's use of the term "replaced" indicates that the policy is new.

Given the foregoing circumstances, we conclude that the trial court did not err in finding that the November 2004 policy was a renewal contract, and thus, we similarly find that the amount of coverage for UM benefits in the case sub judice is not the $1,000,000 liability limit, but the $25,000 per person limit that plaintiffs specifically previously selected in writing.[16] Accordingly, the trial court did not err in granting summary judgment in favor of State Farm.[17]

*Judgment affirmed. Mikell, P. J., and Boggs, J., concur.*

---

[11] *See* OCGA § 33-24-45 (b) (2).

[12] *Borders v. Global Ins. Co.*, 208 Ga. App. 480, 482 (2) (430 SE2d 854) (1993); *see Beasley*, 293 Ga. App. at 11 (holding that "the subsequent policies serve the purpose of a renewal contract, under the commonly understood meaning, by continuing the obligation to insure").

[13] *See Beasley*, 293 Ga. App. at 11 (holding that a change in the policy number did not preclude a grant of summary judgment in favor of insurer that the subject policy was a renewal policy); *Borders*, 208 Ga. App. at 483 (2) (same).

[14] *See Soufi v. Haygood*, 282 Ga. App. 593, 596 (639 SE2d 395) (2006) (holding that addition of a new vehicle to insured's policy did not create a new policy); *Borders*, 208 Ga. App. at 483 (2) (holding that the fact that policy insures different vehicles, that it contains fewer endorsements, or that it provides for a greater or lesser premium does not render it a new policy rather than a renewal).

[15] The Compact Oxford English Dictionary 1966 (2d ed. 1991).

[16] *See Litton*, 308 Ga. App. at 502 (2) (holding that because the subject policy was a renewal, the UM coverage limits were those previously selected by the insured rather than the policy's liability limit); *Beasley*, 293 Ga. App. at 11 (same); *Borders*, 208 Ga. App. at 483-84 (2) (same).

[17] *See Beasley*, 293 Ga. App. at 11; *Borders*, 208 Ga. App. at 483-84 (2).

DECIDED MARCH 22, 2012 —
RECONSIDERATION DENIED APRIL 11, 2012 —

*Lumley & Howell, Wendell K. Howell,* for appellants.
*Carlock, Copeland & Stair, Frederick M. Valz III, Megan E. Boyd,*
for appellee.