**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**March 1, 2023**

# In the Court of Appeals of Georgia

A22A1685. JONES v. GEORGIA FARM BUREAU MUTUAL
INSURANCE COMPANY.

A22A1686. JONES v. GEORGIA FARM BUREAU MUTUAL
INSURANCE COMPANY.

DILLARD, Presiding Judge.

William and Madison Jones appeal the trial court's grant of partial summary

judgment to Georgia Farm Bureau Mutual Insurance Company as to the amount of

uninsured motorist ("UM") coverage provided for in an insurance policy it issued to

their father, Ernie Jones, who was tragically killed in a car accident.[1] In Case No.

A22A1685, William argues the trial court erred in granting partial summary judgment

---

[1] For ease of reference and the sake of clarity, we refer to William and Madison
by their first names individually and as the "appellants" collectively, Georgia Farm
Bureau Mutual Insurance Company as "GFB," and Ernie Jones as "Jones."

to GFB because (1) the UM statute[2] sets the limit of UM coverage at an amount equal to a policy's liability coverage unless the insured affirmatively chooses a lower limit, which Jones did not do; (2) the declaration sheets and the signature page associated with Jones's policy do not establish that he selected $25,000 in UM coverage for bodily injury; (3) the testimony of the insurance agent who met with Jones was not credible; and (4) routine destruction of documentary evidence by GFB required denial of its summary-judgment motion. In Case No. A22A1686, Madison provides additional support for some of the foregoing claims and further argues the trial court erred in granting partial summary judgment to GFB because (1) GFB has the burden of proof, and (2) public policy concerns weigh against the trial court's grant of partial summary judgment to GFB.[3] For the following reasons, we affirm in both appeals.[4]

---

[2] *See* OCGA § 33-7-11 *et seq.*

[3] William and Madison adopt each other's briefs.

[4] Oral argument was held on October 5, 2022, and is archived on the Court's website. *See* Court of Appeals of State of Georgia, Oral Argument, Case Nos. A22A1685 and A22A1686 (Oct. 5, 2022), available at https://vimeo.com/758574737

2

Viewing the evidence in the light most favorable to the appellants (*i.e.*, the nonmoving parties),[5] the record shows that on January 12, 2015, Jones visited GFB's office, where he discussed "insurance matters" with Russ Godwin, the agency manager. During the meeting, Jones made modifications to his GFB policy, and—relevant here—he signed his name underneath the following statement: "I affirmatively choose Uninsured Motorist Limits in an amount less than the Limit of Liability for Bodily Injury and Property Damage Coverage."[6] And while it is undisputed that Jones wanted UM coverage in an amount *less* than the policy's liability limit, the signature page did not provide him with an option to select the *specific* amount of UM coverage desired. Nevertheless, the policy did note that it "contain[ed]" a declaration page with certain information, including the "Coverage and Amount of Insurance," which shows that Jones had a $1,000,000 liability limit for bodily injury per person and $25,000 in UM coverage for same. And after Jones

---

[5] *See*, *e.g.*, *Martin v. Herrington Mill, LP*, 316 Ga. App. 696, 696 (730 SE2d 164) (2012).

[6] In this opinion and some of the relevant case law, the insurance policy's UM and liability limit(s) are referred to both in the singular and plural interchangeably. This is because the insurance policy at issue provides different UM and liability limits for bodily injury per person and bodily injury per accident, but the only coverage relevant here is the UM and liability limits for bodily injury per person.

updated his policy in 2015, GFB sent him periodic notices of the foregoing selections.[7]

On April 18, 2016, while covered by his GFB insurance policy, Jones was tragically killed in a car accident. And during the litigation following the accident, GFB moved for partial summary judgment, seeking a declaratory judgment to establish the amount of UM coverage provided for under Jones's policy. Specifically, GFB contended that Jones affirmatively chose $25,000 in UM coverage for bodily injury per person, as reflected on the policy's declaration page. William and Madison, as Jones's beneficiaries, filed separate responses opposing GFB's motion, (1)

---

[7] GFB maintains it sent Jones a copy of the declaration page every six months after he made his initial UM selections, but it cites to only a few *undated* declaration pages in the appellate record. Suffice it to say, this Court will not "cull the record on behalf of a party, particularly in a case such as this where the record is voluminous." *Callaway v. Willard*, 351 Ga. App. 1, 5 (1) (830 SE2d 464) (2019). Regardless, although it is undisputed that GFB periodically sent Jones a copy of the policy's declaration page after he modified the policy in 2015, it was not required to offer him the option to change his UM coverage selections absent a request to do so. *See* OCGA § 33-7-11 (a) (3) ("The amount of [UM] coverage need not be increased from the amounts shown on the declarations page on renewal once coverage is issued."). *Cf. Gov't. Emps. Ins. Co. v. Morgan*, 341 Ga. App. 396, 400 (1) (a) (800 SE2d 612) (2017) ("[O]nce an insured has exercised the option to reject [UM] coverage, the insurer is under no further duty or obligation to offer the coverage, absent a request, for the life of the policy."). And importantly, the appellants cite no record evidence suggesting Jones ever requested to modify the selections on the declaration page to increase UM coverage after receiving a copy of it from GFB.

4

disputing that Jones selected $25,000 in UM coverage; and (2) arguing that, under such circumstances, the UM statute required GFB to pay UM benefits in the same amount as the policy's limits on liability. Following a hearing on the matter, the trial court ultimately granted GFB's motion, finding that Jones affirmatively chose $25,000 in UM coverage limits when he executed his policy with GFB in 2015. These consolidated appeals follow.

Summary judgment is, of course, proper when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."[8] And in considering a grant or denial of summary judgment, we apply a *de novo* standard of review, viewing the evidence, "and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant[s]."[9] Importantly, at the summary-judgment stage, "[w]e do not resolve disputed facts, reconcile the issues, weigh the evidence, or determine its credibility, as those matters must be submitted to a jury for resolution."[10] Additionally, it is well established in Georgia that insurance contracts are "governed by the rules of construction applicable

---

[8] OCGA § 9-11-56 (c); *accord Martin*, 316 Ga. App. at 697.

[9] *Martin*, 316 Ga. App. at 697 (punctuation omitted).

[10] *Tookes v. Murray*, 297 Ga. App. 765, 766 (678 SE2d 209) (2009).

to other contracts, and words in the policy must be given their usual and common signification and customary meaning."[11] Of course, the hallmark of contract construction is to "ascertain the intention of the parties, as set out in the language of the contract."[12] As a result, when the language of an insurance policy defining the extent of an insurer's liability is "unambiguous and capable of but one reasonable construction, the courts must expound the contract as made by the parties."[13] Finally, the proper construction of a contract, and whether the contract at issue is ambiguous, are "questions of law for the court to decide."[14] With these guiding principles in mind, we turn now to the appellants' specific claims of error, which we will address together because they mirror one another.

---

[11] *Stanley v. Gov't Emps. Ins. Co.*, 344 Ga. App. 342, 344 (1) (810 SE2d 179) (2018) (punctuation omitted); *accord Roberson v. Leone*, 315 Ga. App. 459, 462 (726 SE2d 565) (2012).

[12] *Stanley*, 344 Ga. App. at 344 (1) (punctuation omitted); *accord Y. C. Dev. Inc. v. Norton*, 344 Ga. App. 69, 72 (1) (806 SE2d 662) (2017).

[13] *Stanley*, 344 Ga. App. at 344 (1) (punctuation omitted); *accord Roberson*, 315 Ga. App. at 462.

[14] *Stanley*, 344 Ga. App. at 344 (1) (punctuation omitted); *accord Roberson*, 315 Ga. App. at 462.

1. In several claims of error, both appellants argue that Jones never affirmatively chose $25,000 in UM coverage for bodily injury, as required by OCGA § 33-7-11 (a) (1) (B), and thus, the UM statute dictates that the amount of his UM coverage is equal to the policy's $1,000,000 liability limits. We disagree.

To understand the instant dispute over the amount of UM coverage provided for under Jones's GFB policy, it is necessary to "briefly examine the evolution of Georgia's UM statute, OCGA § 33-7-11."[15] Among other things, the UM statute requires insurers to "provide UM coverage in automobile insurance policies unless the insured rejects the coverage in writing."[16] And before a statutory amendment in 2001, insurers were "required only to provide UM coverage at a statutory minimum level, unless the insured requested greater coverage in writing."[17] But after the 2001 amendment, OCGA § 33-7-11 (a) (1) (A)-(B) requires that an insurer provide "either

_____

[15] *Cline v. Allstate Prop. & Cas. Ins.*, 354 Ga. App. 415, 416 (841 SE2d 63) (2020).

[16] *Id.*; *accord Frey v. Jesperson*, ___ Ga. App. ___, ___, No. A22A1589, 2023 WL 353882, at *2 (2023); *see* OCGA § 33-7-11 (a) (1), (3).

[17] *Cline*, 354 Ga. App. at 416; *see Tice v. Am. Employers' Ins. Co.*, 275 Ga. App. 125, 127 (619 SE2d 797) (2005) (explaining that, prior to the 2001 amendment to the UM Act, an insurer was not required to issue any coverage for any amount greater than the minimum coverage unless the insured requested in writing such higher limits, but the 2001 amendment deleted that provision).

7

the mandatory minimum UM coverage in the amount of $25,000 per person (or $50,000 per accident), or optional UM coverage in an amount equal to the liability coverage in the insured's underlying policy."[18] Finally, while the 2001 amendment permits an insured to "affirmatively choose [UM] limits in an amount less than the limits of liability,"[19] it was meant "to make a policy's liability limits the default provision for UM coverage in the absence of an affirmative election of UM coverage in a lesser amount."[20]

Additionally, unlike an insured's rejection of *any* UM coverage, an insured's choice of UM coverage in an amount less than liability limits need not be made in writing.[21] Nevertheless, the lack of a writing requirement does not absolve an insurer

---

[18] *Cline*, 354 Ga. App. at 416; *see* OCGA § 33-7-11 (a) (1) (A)-(B).

[19] OCGA § 33-7-11 (a) (1) (B).

[20] *Cline*, 354 Ga. App. at 416 (punctuation omitted); *see* OCGA § 33-7-11 (a) (1) (B) (providing that, if a policy's liability limits are greater than the mandatory minimums required by the UM statute, the amount of UM coverage is equal to its liability limits); *Morgan*, 341 Ga. App. at 399 (1) ("The 2001 amendment was intended to make a policy's liability limits the default provision for UM coverage, unless an insured affirmatively elects UM coverage in a lesser amount." (punctuation omitted)).

[21] *See Morgan*, 341 Ga. App. at 399 (noting there is "no specific requirement that an insured's affirmative election of a lesser amount of UM coverage must be made in writing"); *McGraw v. IDS Prop. & Cas. Ins. Co.*, 323 Ga. App. 408, 411-12

8

of its "burden of showing that [the insured] did in fact make an affirmative choice of lesser coverage in support of its position that the term setting forth lesser coverage should be enforced instead of the statutory default coverage."[22] And again, in the absence of such an affirmative choice, the default amount of UM coverage under an insurance policy is in an amount equal to the limit of liability coverage.[23]

Turning now to the relevant statutory provisions, OCGA § 33-7-11 (a) (1) (A)-(B) provide:

---

(744 SE2d 891) (2013) (noting that the insured is not required to obtain in writing the insured's choice regarding the amount of his UM coverage); *Lambert v. Alfa Gen. Ins. Corp.*, 291 Ga. App. 57, 60-61 (660 SE2d 889) (2008) (explaining that, unlike an insured's rejection of UM coverage, an insured's affirmative choice of UM coverage in an amount less than liability coverage need not be made in writing).

[22] *See McGraw*, 323 Ga. App. at 410-11; *accord Morgan*, 341 Ga. App. at 399 (1).

[23] *See* OCGA § 33-7-11 (a) (1) (A)-(B) (requiring insurance policies to provide a minimum of $25,000 in UM coverage for bodily injury, unless such coverage is rejected in writing, and providing that, if an insured affirmatively does not choose an amount of UM coverage less than the amount of liability coverage provided for in the policy, the amount of such coverage will be "[e]qual to the limits of liability"); *Morgan*, 341 Ga. App. at 399 (1) (explaining that the 2001 amendment to the UM statute "was intended to make a policy's liability limits the default provision for UM coverage, unless an insured affirmatively elects UM coverage in a lesser amount" (punctuation omitted)); *Soufi v. Haygood*, 282 Ga. App. 593, 595 (639 SE2d 395) (2006) (same).

9

(a) (1) No automobile liability policy or motor vehicle liability policy shall be issued or delivered in this state to the owner of such vehicle or shall be issued or delivered by any insurer licensed in this state upon any motor vehicle then principally garaged or principally used in this state unless it contains an endorsement or provisions undertaking to pay the insured damages for bodily injury, loss of consortium or death of an insured, or for injury to or destruction of property of an insured under the named insured's policy sustained from the owner or operator of *an uninsured motor vehicle*, within limits exclusive of interests and costs *which at the option of the insured* shall be:

(A) *Not less than $25,000.00 because of bodily injury to or death* of one person in any one accident, and, subject to such limit for one person, $50,000.00 because of bodily injury to or death of two or more persons in any one accident, and $25,000.00 because of injury to or destruction of property; *or*

(B) *Equal to the limits of liability because of bodily injury to or death* of one person in any one accident and of two or more persons in any one accident, and because of injury to or destruction of property of the insured which is contained in the insured's personal coverage in the automobile liability policy or motor vehicle liability policy issued by the insurer to the insured *if those limits of liability exceed* the limits of liability set forth in subparagraph (A) of this paragraph. *In any event, the insured may*

10

*affirmatively choose uninsured motorist limits in an amount less than the limits of liability.*[24]

Here, we are asked to consider whether Jones affirmatively chose UM limits in an amount less than the limits of liability in his GFB policy, and if so, what specific amount of UM coverage he selected. And while Jones was not statutorily required to make an affirmative choice in writing,[25] it is undisputed that he did so. Indeed, when Jones updated his GFB policy in 2015, he signed his name directly underneath the following statement: "I affirmatively choose Uninsured Motorist Limits in an amount less than the Limit of Liability for Bodily Injury and Property Damage Coverage." Importantly, because this statement is unambiguous and tracks the language in OCGA § 33-7-11 (a) (1) (B) almost verbatim, "judicial construction is not only unnecessary but forbidden."[26] So, at a minimum, regardless of the specific *amount* of UM coverage Jones selected, the record conclusively establishes that he desired an amount *less* than the policy's limits of liability.

---

[24] (Emphasis supplied).

[25] *See supra* note 21 & accompanying text.

[26] *Fid. & Deposit Co. of Md. v. Lafarge Bldg. Materials, Inc.*, 312 Ga. App. 821, 823 (720 SE2d 288) (2011) (punctuation omitted); *accord Abdulkadir v. State*, 279 Ga. 122, 123 (2) (610 SE2d 50) (2005); *see supra* notes 13 & accompanying text.

Even so, the appellants appear to argue that OCGA § 33-7-11 (a) (1) (B)'s option of allowing an insured to affirmatively choose UM coverage in an amount less than a policy's liability limits is not properly exercised within the meaning of the statute unless the insured not only makes that affirmative choice but also *simultaneously* selects a specific amount of UM coverage. But the statute imposes no such requirement. Instead, it merely provides that "the insured *may* affirmatively choose uninsured motorist limits in *an amount less than the limits of liability*."[27] And importantly, the appellants identify no language in the UM statute dictating that an insured must select a specific amount of UM coverage at the same time or even on the same page/document when he or she makes the affirmative choice of UM coverage in an amount less than a policy's liability limits. Needless to say, if the General

---

[27] OCGA § 33-7-11 (a) (1) (B) (emphasis supplied).

12

Assembly had wished to impose such a requirement, it could have done so,[28] and we are not at liberty to judicially rewrite the UM statute to include one.[29]

Having established that Jones unequivocally did *not* want UM coverage in an amount equal to the policy's liability limits, we will now consider the specific amount of UM coverage provided for in his policy. And in doing so, we begin with GFB's policy explicitly listing various documents that were "contain[ed]" within it, one of which was a "[d]eclaration" page outlining the "Coverage and *Amount* of

---

[28] *See, e.g.*, *Fair v. State*, 284 Ga. 165, 168 (2) (b) (664 SE2d 227) (2008) ("If the General Assembly had intended to require knowledge of the victim's status as a peace officer in order for the [statute] to apply, the statutory history shows that it knew how to do so. We must presume that its failure to do so was a matter of considered choice." (citation and punctuation omitted)); *Bauerband v. Jackson Cnty.*, 278 Ga. 222, 225-26 (598 SE2d 444) (2004) (noting that the use of the language "sums payable in the individual calendar year renewal term" and "annual payments" elsewhere in a statute showed that, "had the General Assembly wished to require that future obligations be set forth as a sum certain [in the instant provision], it knew how to accomplish that"); *Inland Paperboard & Packaging, Inc. v. Ga. Dep't of Revenue*, 274 Ga. App. 101, 104 (616 SE2d 873) (2005) (noting that, if the General Assembly intended to include a particular exemption in a tax statute, the statutory history showed that it knew how to do so).

[29] *See Lumpkin Cnty. v. Ga. Insurers Insolvency Pool*, 292 Ga. 76, 78 (2) (734 SE2d 880) (2012) ("This Court . . . is not in the business of rewriting unambiguous statutory authority."); *Abdulkadir*, 279 Ga. at 124 ("[A] court of law is not authorized to rewrite the statute by inserting additional language that would expand its application . . . ."); *Groover v. Johnson Controls World Serv.*, 241 Ga. App. 791, 793 (527 SE2d 639) (2000) (explaining that this Court can not "rewrite a statute under the guise of interpreting it").

Insurance."[30] Importantly, the declaration page reflects that Jones selected a $1,000,000 limit of liability coverage for bodily injury per person and *$25,000* in UM coverage for same. This selection is, of course, entirely consistent with Jones's affirmative choice of UM coverage in an amount less than the policy's limits of liability.

But notwithstanding the foregoing documentation, the appellants claim the record is insufficient to establish that Jones's policy only provides for $25,000 in UM benefits. They do this by essentially arguing that because Jones did not specify the exact amount of reduced UM coverage he wanted in the same place where he signed a document unequivocally expressing his choice to have UM coverage in an amount less than the policy's limits of liability, the statement has no (or limited) evidentiary value. Indeed, the appellants repeatedly use the words "passive inaction," "inaction," or "non-response" to refer to the other documents evincing the exact amount of UM coverage Jones selected—thus, strongly implying that the document containing Jones's affirmative choice of UM coverage in an amount less than the policy's limits of liability is of no (or little) consequence to our analysis. And in doing so, they primarily rely on this Court's decisions in *McGraw v. IDS Property & Casualty*

_____

[30] (Emphasis supplied).

14

*Insurance Company*[31] and *Government Employees Insurance Company v. Morgan*.[32]

We find this argument unpersuasive and the cases the appellants rely upon readily distinguishable.

In *McGraw*, there was a "*dearth* of evidence" concerning the insured's "choice about UM coverage" when the policy was first issued to him.[33] Indeed, the application the insured signed in *McGraw* "*did not refer to UM coverage in any respect*."[34] Further, the insured in *McGraw* testified that he made "no decisions at all regarding the policy," but "delegated that task to his late wife[,]" and "[t]he record contain[ed] *no documents* pertaining to the . . . policy other than the application signed by [the insured] (which [did] not mention UM coverage) and the policy itself."[35] So, although the declaration page specified UM coverage limits at the lesser amount than the liability limits, that page alone could not "support an inference that either [the insured] or his wife made an affirmative choice among the various UM coverage

---

[31] 323 Ga. App. 408.

[32] 341 Ga. App. 396.

[33] *McGraw*, 323 Ga. App. at 411 (emphasis supplied).

[34] *Id.* at 409 (emphasis supplied).

[35] *Id.* at 411 (emphasis supplied).

15

options available under OCGA § 33-7-11 (a) (1) . . . ."[36] Similarly, in *Morgan*, there was *no evidence* the insureds "affirmatively chose a UM limit lower than the default amount."[37] And applying *McGraw* in *Morgan*, we held that "a declarations page showing a UM limit less than the bodily injury limit, *standing alone*, was insufficient to demonstrate an affirmative choice of a lesser amount of coverage."[38]

But here, unlike in *McGraw* and *Morgan*, GFB does not rely *solely* on the declaration page to establish that Jones chose UM coverage in an amount less than the liability limits. To the contrary, he expressly made that choice in writing; and the policy informed Jones that it contained a declaration page, which, in turn, specified the amount of UM coverage he selected. This case, then, involves clear record evidence of an affirmative written choice by the insured of UM coverage in an amount less than the liability limits, a policy referencing a declaration page, and a declaration page specifying and memorializing the amount of UM coverage selected by the insured. As a result, the appellants' reliance on *McGraw* and *Morgan* is misplaced.

---

[36] *Id.*

[37] *Morgan*, 341 Ga. App. at 402 (1) (b) (ii) (emphasis supplied).

[38] *Id.* (emphasis supplied).

16

Moreover, this Court's decision in *Cline v. Allstate Property & Casualty Insurance*[39] is far more analogous to the instant case than *McGraw* or *Morgan*. In *Cline*, the insured completed a UM coverage "selection/rejection form" in 2003, and she selected UM coverage equal to the policy's liability limits, which, at the time, was $25,000.[40] But in 2008, the insured submitted a second selection/rejection form, changing her selection to UM coverage in an amount less than the policy's liability limits.[41] And although her UM bodily injury limit remained $25,000 per person, her "liability limit had increased to $100,000."[42] Further, the declaration page of the policy in effect on the date of the insured's accident "listed a UM bodily injury limit of $25,000 per person and a liability limit of $100,000."[43] And under these circumstances, the *Cline* Court held that the record "clearly establishe[d] that in . . . 2008, the insured affirmatively chose UM coverage with a bodily injury limit of $25,000 per person, which was less than the liability limit on the policy, and signed

---

[39] 354 Ga. App. 415.

[40] *Id.* at 416.

[41] *See id.*

[42] *See id.*

[43] *Id.*

17

a disclosure form explaining the UM coverage."[44] As a result, in *Cline*, a 2003 declaration page and the insured's 2008 selection of UM coverage in an amount less than the policy's liability limits was sufficient evidence to demonstrate the insured was only entitled to $25,000 in UM coverage. Thus, applying *Cline* in this case, the declaration page referenced and contained in Jones's policy, *combined* with his affirmative written selection of UM coverage in an amount less than liability, is likewise sufficient evidence to establish that he affirmatively selected $25,000 in UM coverage.[45]

---

[44] *Id.*

[45] Although we have held that a declaration page—standing alone—is insufficient to establish the insured made an affirmative choice of UM coverage in an amount less than the policy's liability limits, we have considered a declaration page as *some* evidence of an insured's selection in an insurance policy. *See Martin v. Chasteen*, 354 Ga. App. 518, 519 (2) (a) (841 SE2d 157) (2020) ("[A]n examination of the declaration pages of the insurance policy made it readily apparent that the new barn was not covered."); *Brown v. Assurance Am. Ins. Co.*, 354 Ga. App. 373, 375 (2) (841 SE2d 15) (2020) (considering the insurance policy, application, and declaration page when holding that the insured had rejected UM coverage in writing because, *inter alia*, the declaration page was incorporated into the policy); *Infinity Gen. Ins. Co. v. Litton*, 308 Ga. App. 497, 502 (2) (707 SE2d 885) (2011) ("[T]he insurer] was entitled to judgment, as a matter of law, that the 2007 policy provided UM coverage of $50,000 per person, as indicated on the policy's declarations page"); *Payne v. Middlesex Ins. Co.*, 259 Ga. App. 867, 869 (578 SE2d 470) (2003) ("*Read together* with the Declarations Page, the policy shows that [the insured] had all coverages except the auto total disability insurance." (emphasis supplied)); *Hartford Cas. Ins. Co. v. O'Callaghan*, 176 Ga. App. 135, 135 (1985) ("In the instant case, the

In sum, an insured is charged with "awareness of the insurance coverage [he or she] solicited, and with checking the policy to see that proper coverage had been obtained."[46] And here, Jones executed an insurance policy in which he signed a statement affirmatively choosing UM coverage in an amount less than the policy's liability limits, the policy specifically informed Jones that it contained a declaration page detailing the amount of the coverage he selected, and that page established that he chose $25,000 in UM coverage for bodily injury. Considering this evidence as a whole, GFB satisfied its burden of showing that the requirements of OCGA § 33-7-11 (a) (1) (B) have been met, and Jones's policy provides for $25,000 in UM coverage for bodily injury.

2. Next, the appellants argue the trial court erred in granting partial summary judgment to GFB because Godwin—the insurance agent who met with Jones in

---

declarations page clearly sets forth the limits of liability for uninsured motorists coverage.").

[46] *Eells v. State Farm Mut. Auto. Ins. Co.*, 324 Ga. App. 901, 905 (1) (c) (752 SE2d 70) (2013) (punctuation omitted); *accord Atlanta Int'l Props., Inc. v. Ga. Underwriting Ass'n*, 149 Ga. App. 701, 702 (2) (256 SE2d 472) (1979); *see Greene v. Lilburn Ins. Agency, Inc.*, 191 Ga. App. 829, 829 (383 SE2d 194) (1989) ("The general rule is that an insured has an obligation to read and examine his insurance policy to determine the nature of the coverage therein.").

19

2015—was not credible for numerous reasons. But Godwin's credibility was not considered by the trial court and is not at issue on appeal.

As previously explained, at the summary-judgment stage, we do not "resolve disputed facts, reconcile the issues, weigh the evidence, or determine its credibility, as those matters must be submitted to a jury for resolution."[47] Accordingly, in its summary-judgment order, the trial court expressly noted that Godwin's credibility was irrelevant to its ruling because his testimony was not necessary to resolve GFB's motion. As a result, Godwin's credibility is outside the scope of our review.[48] And given our holding in Division 1 *supra*, we agree with the trial court that the documentary evidence alone is sufficient to resolve this case.

3. The appellants also maintain summary judgment is improper because, during his 2015 meeting with Jones, Godwin threw away a quote sheet instead of including it in Jones's file. And they claim this "proof of spoliation" creates a rebuttable

---

[47] *Stadterman v. Southwood Realty Co.*, 361 Ga. App. 613, 614 (865 SE2d 231) (2021) (punctuation omitted).

[48] *See Hart v. Groves*, 311 Ga. App. 587, 588 (1) (716 SE2d 631) (2011) ("This is a Court for correction of errors below, and, in the absence of a ruling by the trial court, this Court has nothing to review.").

presumption that the quote sheet was favorable evidence for them. Again, we disagree.

In its order, the trial court expressly noted that the appellants' spoliation argument did not affect its ruling because neither the accident nor this litigation had occurred when the quote sheet was thrown away. Indeed, spoliation refers to "the destruction or failure to preserve evidence that is necessary to contemplated or pending litigation."[49] And because Jones's accident did not occur until 2016, this litigation was not pending or even being contemplated in 2015. As a result, appellants' spoliation argument is a nonstarter.

4. Finally, the appellants suggest there is a genuine issue of material fact as to whether Jones was even offered UM coverage, and consequently, the trial court's grant of summary judgment contravenes public policy. This contention is belied by the record.

The signature page of Jones's policy offered him the option to reject UM coverage or select it in an amount less than the policy's liability limits. Had Jones not selected one of those options, he would be entitled to the statutory default of UM

---

[49] *Kitchens v. Brusman*, 303 Ga. App. 703, 704 (1) (694 SE2d 667) (2010) (punctuation omitted); *accord Silman v. Assocs. Bellemeade*, 286 Ga. 27, 28 (685 SE2d 277) (2009).

coverage equal to the amount of liability coverage. But he made his choice, and he did so in writing.

Furthermore, in advancing this public-policy argument, the appellants rely on a single case, which applied the pre-2001 version of the UM statute and did not involve the issues presented in this appeal.[50] Thus, they have failed to support this claim of error with relevant legal authority. And needless to say, rhetoric—no matter how eloquent or well meaning—is "not a substitute for cogent legal analysis, which is, at a minimum, a discussion of the *appropriate law* as applied to the relevant facts."[51]

For all these reasons, we affirm the trial court's grant of partial summary judgment to GFB.

*Judgments affirmed. Mercier and Markle, JJ., concur.*

---

[50] *See Jones v. Ga. Farm Bureau Mut. Ins. Co.*, 248 Ga. App. 394, 395 n.2 (546 SE2d 791) (2001) (explaining that the version of OCGA § 33-7-11 in effect at the time of the accident applied, rather than the amended version, which became effective January 1, 2001); *see id.* at 397 (holding that, based on the wording of the pre-2001 version of OCGA § 33-7-11 (a) (3), "an insured does not automatically retain the right to seek excess coverage merely because he or she never rejected such coverage previously").

[51] *Dixon v. Metro. Atlanta Rapid Transit Auth*., 242 Ga. App. 262, 266 (4) (529 SE2d 398) (2000) (punctuation omitted and emphasis supplied); *Gryder v. Conley*, 352 Ga. App. 891, 900 (5) (b) (836 SE2d 120) (2019) (same).