## A05A1386. TICE et al. v. AMERICAN EMPLOYERS' INSURANCE COMPANY.
### (619 SE2d 797)

PHIPPS, Judge.

American Employers' Insurance Company, d/b/a One Beacon Insurance, provided Renee and Michael Tice with two automobile liability insurance policies, one in 1992 and the other in 1996. The limit for bodily injury liability in each policy, as renewed, was $50,000 per person; the policies, however, provided uninsured motorist (UM) coverage in the amount of only $25,000 per person. In 2003, Renee Tice was severely injured in an automobile accident with an uninsured motorist. The Tices subsequently brought this suit for a declaratory judgment that, under a 2001 amendment to Georgia's UM statute, American was obligated to provide Renee Tice with UM coverage in amounts equal to the liability limits in her underlying policies. The superior court awarded summary judgment to American. We affirm.

On an insurance form executed in 1996, Michael Tice elected to be provided with UM coverage in the minimum statutorily required amounts, rather than rejecting UM coverage altogether or being provided with coverage in amounts equal to the bodily injury liability limits in his underlying policies. Following the 2003 accident, Renee Tice made a claim against American for stacked UM coverage in the amount of $50,000 under each policy for a cumulative amount of $100,000 for the accident. American took the position that although the two policies could be stacked as to UM coverage, its liability under the stacked coverage was $25,000 per person under each policy for a cumulative amount of $50,000. Prior to bringing this action, the Tices filed a tort suit arising from the 2003 accident against the uninsured motorist's estate. During the pendency of this action, they obtained a $100,000 consent judgment in the tort suit.

As originally enacted in 1963, the UM statute (now codified at OCGA § 33-7-11) required UM coverage for bodily injury in the set

amount of $10,000 per person and $20,000 per accident,[1] unless the insured rejected such coverage in writing.[2]

When American issued the two policies to the Tices in the 1990s, the UM statute required automobile liability insurance policies to provide, "at the option of the insured": (a) "[n]ot less than" $15,000 per person and $30,000 per accident for bodily injury or death, or (b) "[n]ot greater than" the liability limits contained in the insureds' underlying policy.[3] Under provisos in the UM statute then in effect, UM coverage was not applicable where any insured named in the policy rejected the minimum coverage in writing.[4] The insurer, however, was not required to issue any coverage for any amount greater than the minimum coverage unless the insured requested in writing such higher limits.[5] And the insurer was not required to provide coverage in higher limits "in or supplemental to a renewal policy where the named insured had rejected coverage in connection with a policy previously issued to him by the same insurer."[6]

In 2000, the General Assembly amended the UM statute, OCGA § 33-7-11 (a) (1) (A), to raise the amounts of minimum UM coverage for bodily injury or death to $25,000 per person and $50,000 per accident.[7] American, accordingly, increased the Tices' UM coverage to $25,000 per person and $50,000 per accident in each of their renewal policies.

A 2001 amendment to the UM statute, OCGA § 33-7-11 (a) (1) (B) (only applicable to policies issued or renewed on or after January 1, 2002), requires an insurer to provide either the mandatory minimum UM coverage (in the same amounts as required by prior law, i.e., $25,000 per person and $50,000 per accident) or optional UM coverage in an amount "equal to" the liability coverage in the insureds' underlying policy.[8]

The 2001 amendment thus changes prior law, which authorized optional UM coverage to be provided in amounts less than a policy's

---

[1] Ga. L. 1963, pp. 588-589, § 1, enacting Code Ann. § 56-407A (c).

[2] Ga. L. 1963, p. 589, § 1, enacting Code Ann. § 56-407A (d); see *Nat. Union Fire Ins. Co. v. Johnson*, 183 Ga. App. 38, 39 (357 SE2d 859) (1987).

[3] OCGA § 33-7-11 (a) (1) (A), (B), as amended by Ga. L. 1978, p. 1896, § 1, and by Ga. L. 1984, pp. 839-840, § 1.

[4] OCGA § 33-7-11 (a) (3), as amended by Ga. L. 1978, p. 1897.

[5] Id.; compare former OCGA § 33-34-5 (known as Georgia's no-fault statute) which, as recognized in *Flewellen v. Atlanta Cas. Co.*, 250 Ga. 709, 710-711 (1) (300 SE2d 673) (1983), imposed on an insurer the duty to provide minimum personal injury protection coverage in the amount of $50,000 unless a prospective insured made an election in writing to reduce the coverage to not less than $5,000.

[6] See note 5, supra.

[7] Ga. L. 2000, pp. 1516-1517, § 1.

[8] Ga. L. 2001, p. 1228, § 1; for the effective date of the 2001 amendment, see Ga. L. 2001, p. 1228, § 3 (not codified).

underlying liability limits. Further, the 2001 amendment provides in subsection (a) (1) (A) that the insured may "affirmatively choose" UM coverage in an amount less than his or her policy's underlying liability limits.[9] The proviso, under which the insurer was not required to issue any coverage for any amount greater than the minimum coverage unless the insured requested in writing such higher limits, was thus deleted.[10]

Similar to prior law, the 2001 amendment also provides, in subsection (a) (3), that neither UM coverage in the statutory minimum amounts nor in the increased liability amounts of the underlying policy are applicable "where any insured named in the policy shall reject the coverage in writing."[11] And the 2001 amendment to subsection (a) (3) further provides that UM coverage "need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with a policy previously issued to said insured by the same insurer."[12] And finally the last two sentences of subsection (a) (3), as amended in 2001, now provide: "The amount of coverage need not be increased in a renewal policy from the amount shown on the declarations page for coverage existing prior to July 1, 2001. The amount of coverage need not be increased from the amounts shown on the declarations page on renewal once coverage is issued."[13]

The Tices argue that in enacting the 2001 amendment, the General Assembly intended to provide that the limits of liability chosen by the insured in the underlying policy act as a default provision for UM coverage, so that all new and renewal policies issued on or after the effective date of the amendment would automatically provide UM coverage in an amount equal to the liability limits selected by the insured in their underlying policy (unless the insured should affirmatively choose coverage in a lesser amount). The Tices further argue that they are entitled to the increased limits because American has not, at any time since enactment of the 2000 or 2001 amendments, provided them with notice of their right to have UM coverage limits equal to their increased liability limits of $50,000 per person and $100,000 per accident.

We find no merit in these arguments. We agree that the intent of the 2001 amendment was to make the liability limits in the insured's underlying policy the default provision when the insured elects UM coverage unless the insured affirmatively chooses UM coverage in a

---

[9] Id.
[10] See OCGA § 33-7-11 (a) (3), as amended by Ga. L. 2001, p. 1229, § 2.
[11] Id.
[12] Id.
[13] Id.

lesser amount. Here, however, the insured in 1996 affirmatively chose UM coverage in the lesser statutorily-required minimum amount. When the statute was amended in 2000 to raise the minimum amount, the Tices' UM coverage was increased accordingly. Nothing in the 2001 amendment required the insurer to notify policyholders who had chosen the statutory minimum amounts of UM coverage that optional UM coverage now must be equal to the liability limits of the underlying policy. In fact, it could be argued that even for those policyholders who had chosen optional UM coverage in amounts less than their underlying liability coverage, "[t]he amount of coverage need not be increased in a renewal policy . . . for coverage existing prior to July 1, 2001."[14] The court did not err in awarding summary judgment to American.

*Judgment affirmed. Andrews, P. J., and Mikell, J., concur.*

DECIDED AUGUST 15, 2005 — 

*Robert P. Wilson*, for appellants.
*McLaughlin, Hendon, Miller & Croy, James C. McLaughlin, Jr.,* for appellee.