## A07A2387. LAMBERT v. ALFA GENERAL INSURANCE CORPORATION.
### (660 SE2d 889)

ADAMS, Judge.

Christopher Eugene Lambert appeals the trial court's order denying his motion for summary judgment, but granting summary judgment to Alfa General Insurance Corporation and declaring that its policyholder, Bruce Self, had affirmatively elected to reduce his uninsured motorist bodily injury coverage to $25,000 per person and $50,000 per accident. We affirm.

On May 30, 2005, Lambert and another person were passengers in Self's 1995 Dodge Caravan when it was struck by a vehicle driven by Stephanie Marie Reese, an uninsured motorist. Both Reese and Self were killed in the accident; Lambert and the other passenger survived. Self originally maintained uninsured motorist (UM) coverage on the minivan of $100,000 per person and $300,000 per accident. But Alfa presented affidavit evidence that Self elected to change the UM coverage to $25,000 per person and $50,000 per accident as of March 4, 2005. In that regard, Self came to his agent's office and signed the following written statement: "Please change the U/M to 25/50/25 on my 95 Dodge Caravan effective 3-04-05." Alfa subsequently issued a new declaration dated March 4, 2005, which provided:

> In consideration of a reduction in premium, the following optional deductible as indicated in the Schedule below, will apply to a covered property damage loss to the covered car:

| | |
|---|---|
| UNINSURED MOTORIST/BI | $25,000 PER PERSON |
| UNINSURED MOTORIST/BI | $50,000 PER ACCIDENT |
| UNINSURED MOTORIST/PD | $25,000 PER ACCIDENT |
| UNINSURED MOTORIST/PD | $250 DEDUCTIBLE |

After the accident, Alfa alleges that it paid $25,000 to Self's estate and then filed this declaratory judgment and interpleader action[1] to determine the distribution of the remaining $25,000 in policy proceeds. Lambert counterclaimed for declaratory judgment contending that Self had not affirmatively elected to reduce the uninsured motorist coverage for bodily injury and that the limits remained $100,000 per person/$300,000 per accident. The trial court agreed with Alfa's position and this appeal ensued.

Lambert appeals, contending that the trial court erred for the following reasons: (1) both the written election purportedly signed by Self and the policy amendment were ambiguous and thus did not affect the uninsured motorist coverage for bodily injury; (2) there were no separate signatures rejecting bodily injury coverage and property damage coverage, which he contends were required to change the coverage; and (3) the trial court relied upon affidavits containing inadmissible evidence in granting summary judgment.

Under Georgia law,

> contracts of insurance are interpreted by ordinary rules of contract construction. . . . Where the terms are clear and unambiguous, and capable of only one reasonable interpretation, the court is to look to the contract alone to ascertain the parties' intent.

(Citations omitted.) *Boardman Petroleum v. Federated Mut. Ins. Co.*, 269 Ga. 326, 327-328 (498 SE2d 492) (1998). "However, if a provision of an insurance contract is susceptible of two or more constructions, even when the multiple constructions are all logical and reasonable, it is ambiguous, and the statutory rules of contract construction will be applied." (Citation omitted.) *Hurst v. Grange Mut. Cas. Co.*, 266 Ga. 712, 716 (4) (470 SE2d 659) (1996). See OCGA § 13-2-2. In such a case, the following "[t]hree well known rules" of contract construction apply:

---

[1] The interpleader portion of the claim became moot after Lambert and the other passenger agreed to equally split the $25,000 if the policy limits for bodily injury were determined to be $25,000 per person and $50,000 per accident.

> [a]ny ambiguities in the contract are strictly construed against the insurer as drafter of the document; any exclusion from coverage sought to be invoked by the insurer is likewise strictly construed; and insurance contracts are to be read in accordance with the reasonable expectations of the insured where possible.

(Citations omitted.) *Brown v. North American Specialty Ins. Co.*, 235 Ga. App. 299, 303-304 (508 SE2d 741) (1998).

Here, no such ambiguity exists. The March 4, 2005 declaration for Self's insurance policy clearly sets out the limits of his uninsured motorist coverage, as $25,000 per person and $50,000 per accident for bodily injury and $25,000 per accident for property damage. The trial court properly considered this declarations page as evidence. Alfa attached to its complaint a two-page exhibit, which the complaint alleged to be the declarations of Self's policy showing the revised limits for UM coverage. These documents were attached to a signed, but unnotarized, statement reflecting that they were true and correct copies of Self's policy. The first page of the exhibit simply reflects that Self had uninsured motorist coverage and the second page contains the previously quoted schedule of $25,000/$50,000/$25,000 in coverage limits. Although Lambert denied this allegation in his answer, Alfa later submitted the affidavit of Gail Pelt, a vice president in Alfa's underwriting department, who testified that on March 4, 2005 Alfa changed the UM policy limits on Self's policy to $25,000/$50,000/$25,000, as reflected in the declaration. While Pelt's affidavit attached only the first page of the declaration contained in the complaint's exhibit, it is clear that the affidavit also relied upon the second page setting out the schedule of coverage, because it is referenced in the affidavit and is the only document containing such information.

The better practice certainly would have been to attach copies of both pages to Pelt's affidavit for identification, but we find that the record is sufficient to authenticate the documents for the court's consideration. "An affidavit need not attach material upon which it is based if that material is part of the record in the case and is before the trial court, provided that the affidavit clearly identifies the record matter upon which it is based." (Footnote omitted.) *Jones v. Orris*, 274 Ga. App. 52, 57 (616 SE2d 820) (2005). Accordingly, we find Alfa sufficiently established the written insurance contract in effect for Self at the time of the accident, and we find that the

contract was not ambiguous with regard to the UM coverage available to Lambert.[2]

Lambert attempts to introduce an ambiguity into the declarations page, however, by noting that it provides that the lower premium was given in consideration for a revised deductible on property damage claims, without reference to bodily injury. While it is true that the declarations page only references the deductible on property damage claims, that reference does not render the schedule of coverage ambiguous. Under OCGA § 33-7-11 (a) (2), the deductibles for UM property and bodily injury coverage may be separate or combined depending upon how the policy is written. Self was free, therefore, to negotiate a reduced premium based upon a change in deductible in either or both categories. OCGA § 33-7-11 (a) (2) (D).[3]

In any event, the amount of such deductibles is not pertinent to the issue of UM coverage. Whatever the result of Self's negotiations, the UM limits are clear from the language of the schedule. "[A] word or phrase is ambiguous only when it is of uncertain meaning, and may be fairly understood in more ways than one . . . [so that it] involves a choice between two or more constructions of the contract." (Citation and punctuation omitted.) *Western Pacific Mut. Ins. Co. v. Davies*, 267 Ga. App. 675, 680 (601 SE2d 363) (2004). We find that there is only one way to interpret the declaration's schedule of coverage.

Lambert next contends, citing OCGA § 33-7-11 (a) (3), that Self was required to make his election to reduce his UM coverage in writing, with two signatures, one confirming his decision to reduce the bodily injury coverage and a separate signature for property damage. We find no support for such an argument. OCGA § 33-7-11 mandates that automobile policies must provide UM coverage in an amount between the $25,000/$50,000/$25,000 coverage limits in this case and the limits of liability coverage set out in the individual policy. OCGA § 33-7-11 (a) (1). The statute provides that an insured "may affirmatively choose" limits in an amount less than the liability coverage, but there is no specific requirement that this election be made in writing. OCGA § 33-7-11 (a) (1) (B). An insured may also choose to have no UM coverage, but such an election must be in writing. OCGA § 33-7-11 (a) (3). Nothing in the statute,

---

[2] The schedule sets out the coverage limits by using the abbreviations "BI" and "PD." Although Lambert contends this makes the schedule ambiguous, these abbreviations correlate to bodily injury and property damage, the kinds of UM coverage contemplated under OCGA § 33-7-11 (a), and Lambert has offered no reasonable alternative interpretation of the abbreviations.

[3] Because no reference is made to a change in deductible for bodily injury, any provisions addressing such a deductible in the original policy presumably would have remained in effect.

however, requires separate, signed, written elections for reductions in UM coverage for bodily injury and property damage.[4]

Thus, the statute only required that Self make an affirmative election to reduce his UM coverage below the liability limits on his policy. *Soufi v. Haygood*, 282 Ga. App. 593, 595 (639 SE2d 395) (2006). And the record contains a written statement signed by Self to "[p]lease change the U/M to 25/50/25 on my 95 Dodge Caravan effective 3-04-05." Self signed this document in his agent's office, and Lambert does not contest the signature. We find that this statement is sufficient to evidence Self's affirmative election to reduce his UM coverage.

The language clearly manifests Self's intent to maintain UM coverage, and is not an attempt to eliminate it. Three basic categories of UM coverage exist under OCGA § 33-7-11 (a) (1) — bodily injury per person, bodily injury per accident and property damage. Self's statement reflects three different amounts: "25/50/25." The minimum coverage allowable under OCGA § 33-7-11 (a) (1) (A) is $25,000 per person and $50,000 per accident for bodily injury, and $25,000 per accident for property damage, and the numbers in Self's statement directly correspond to these amounts, with the zeroes omitted. Thus, Self affirmatively elected the minimum UM coverage. Although Lambert contends Self's election is ambiguous, he fails to offer any other reasonable interpretation of the statement. While he asserts that the figures could represent $25/$50/$25, such an interpretation is not reasonable under Georgia law because it would be requesting coverage below the statutory minimum.

Accordingly, we affirm the trial court's denial of Lambert's motion for summary judgment and the grant of summary judgment to Alfa.

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED MARCH 7, 2008 —
RECONSIDERATION DENIED APRIL 11, 2008 

*William L. Skinner*, for appellant.

---

[4] Lambert attempts to rely upon *Flewellen v. Atlanta Cas. Co.*, 250 Ga. 709 (300 SE2d 673) (1983) to support his argument, but that case construed an old statute setting out the requirements for personal injury protection (PIP) and has no application in this case.

*Mabry & McClelland, John G. Godsey*, for appellee.