**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**June 27, 2013**

# In the Court of Appeals of Georgia

A13A0547. McGRAW v. IDS PROPERTY & CASUALTY INSURANCE COMPANY.

MCFADDEN, Judge.

This appeal concerns the amount of uninsured/underinsured (UM) coverage available under a vehicle liability insurance policy that IDS Property & Casualty Insurance Company issued to Tommy E. McGraw. Because the undisputed evidence does not demonstrate that McGraw affirmatively chose an amount of UM coverage less than the statutory default amount, the trial court erred in finding that the policy provided UM coverage in the lesser amount. Accordingly, we reverse both the trial court's grant of summary judgment to IDS and its denial of partial summary judgment to McGraw on the issue of the amount of UM coverage in the policy.

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). On appeal from the grant or denial of a motion for summary judgment, we review the evidence de novo, and all reasonable conclusions and inferences drawn from the evidence are construed in the light most favorable to the nonmovant. *Congress Street Properties v. Garibaldi's*, 314 Ga. App. 143, 145 (723 SE2d 463) (2012).

The relevant evidence in this case is undisputed. In February 2007, IDS issued a vehicle liability policy to McGraw. Although McGraw signed the application for the policy and was the named insured thereon, he delegated all decision-making responsibility regarding the policy to his wife and personally made no choices regarding the policy's terms. The application that McGraw signed did not refer to UM coverage in any respect. The declarations page of the February 2007 policy reflected, inter alia, $100,000 per person in bodily injury liability coverage and $50,000 per person in UM coverage. IDS issued superceding policies to McGraw every six months, in each instance with a declarations page reflecting the same per person bodily injury liability and UM coverage amounts as the declarations page of the February 2007 policy.

In December 2008, IDS sent McGraw a letter stating that his UM coverage had been revised to reflect a change in Georgia law. The letter asked McGraw to complete a "renewal declaration page" to "readjust [his] UM coverage to more specifically meet [his] needs." An enclosed election form offered McGraw a choice of "UM Added-on to At-Fault Liability Limits" or "UM Reduced-by At-Fault Liability Limits", instructed him to indicate the coverage limits he wanted with his selection, and gave him the option to reject UM coverage entirely. The form also stated: "If you do not complete and return this form, we will continue to apply UM Added-on coverage to the current limit shown on your renewal declaration page."

On June 12, 2009, McGraw and his wife were injured in a vehicular accident, and his wife later died of her injuries. McGraw brought an action for damages against the driver of the other vehicle, among others, on behalf of both himself and his wife's estate, and he served the action on IDS as an unnamed UM insurer. IDS answered the complaint in its own name, thereby becoming a party to the action. See *Thompson v. Allstate Ins. Co.*, 285 Ga. 24, 25 (673 SE2d 227) (2009). IDS also counterclaimed for a declaratory judgment that its UM liability was limited to $50,000.

McGraw moved for partial summary judgment against IDS on the ground that, under OCGA § 33-7-11, he was entitled to UM coverage in an amount equal to the

3

bodily injury liability coverage specified on his policy declarations page ($100,000), because he did not affirmatively choose a lesser amount of UM coverage. IDS opposed McGraw's motion and moved for summary judgment on the ground that McGraw was entitled only to the UM coverage specified on the declarations page ($50,000) because he did not request a higher amount on renewal. The trial court denied McGraw's motion and granted IDS's motion, finding that the policy provided only $50,000 in UM coverage.

Pertinently, OCGA § 33-7-11 (a) (1) "requires insurance policies issued in Georgia to contain provisions for UM coverage which *at the option of the insured* shall be (i) not less than $25,000 per person, or (ii) equal to the policy's bodily injury liability insurance coverage, if higher than $25,000 per person." *Infinity Gen. Ins. Co. v. Litton*, 308 Ga. App. 497, 499 (2) (707 SE2d 885) (2011) (citations omitted; emphasis supplied). It further provides that "[i]n any event, the insured may *affirmatively choose* [UM] limits in an amount less than the limits of liability [for bodily injury]." OCGA § 33-7-11 (a) (1) (B) (emphasis supplied). "This Code section was intended to make a policy's liability limits the default provision for UM coverage, unless an insured affirmatively elects UM coverage in a lesser amount." *Infinity Gen. Ins. Co.*, 308 Ga. App. at 499 (2) (citation omitted).

Accordingly, when a vehicle insurance policy limits UM coverage to an amount less than the policy's bodily liability limits without the insured having affirmatively chosen that lesser amount, the policy is not in compliance with OCGA § 33-7-11 (a) (1). In such instance, the requirements of the statute control over the terms of the policy. See OCGA § 33-24-12 (a) (an otherwise valid insurance policy that contains a condition or provision not in compliance with the requirements of Title 33 "shall be construed and applied in accordance with such conditions and provisions as would have applied had the policy . . . been in full compliance with this title"); *Dees v. Logan*, 282 Ga. 815, 816 (653 SE2d 735) (2007) ("When an uninsured motorist policy provision is in conflict with the clear intent of OCGA § 33-7-11, the policy provision is unenforceable and the statute controls.") (citation omitted). Cf. *Flewellen v. Atlanta Cas. Co.*, 250 Ga. 709, 714 (3) (300 SE2d 673) (1983) (stating, in regard to another provision of the insurance code, that "when an insurer issues a policy with provisions not in compliance with the law the contract will not be rendered void but the provisions of the statute will be grafted into the policy").

On its face, McGraw's policy with IDS provides for less UM coverage than the default amount that OCGA § 33-7-11 (a) (1) requires. The lesser amount shown on the policy's declarations page may be enforced only if McGraw affirmatively chose

5

it, as set forth in OCGA § 33-7-11 (a) (1) (B); otherwise, the policy must be read to provide for UM coverage limits at the default amount, equal to the policy's bodily injury liability coverage limits.

IDS correctly argues that it was not required to obtain in writing McGraw's choice regarding the amount of his UM coverage. See *Lambert v. Alfa Gen. Ins. Corp.*, 291 Ga. App. 57, 60 (660 SE2d 889) (2008) (unlike an insured's rejection of any UM coverage, an insured's affirmative choice of UM coverage in an amount less than liability coverage need not be made in writing). But the lack of a writing requirement does not absolve IDS of its burden of showing that McGraw *did* in fact make an affirmative choice of lesser coverage in support of its position that the term setting forth lesser coverage should be enforced instead of the statutory default coverage. See generally *TranSouth Fin. Corp. v. Rooks*, 269 Ga. App. 321, 324 (1) (604 SE2d 562) (2004) ("One seeking to enforce a contract must bear the burden of proof as to all of the essential elements of the contract, including the assent to the contractual terms.") (citation omitted). And there is a dearth of evidence pertaining to McGraw's choice about UM coverage when IDS first issued him the policy in 2007. McGraw testified that he made no decisions at all regarding the policy, but delegated that task to his late wife. The record contains no documents pertaining to

6

the February 2007 policy other than the application signed by McGraw (which does not mention UM coverage) and the policy itself. While the declarations page specifies UM coverage limits at the lesser amount, this cannot support an inference that either McGraw or his wife made an *affirmative* choice among the various UM coverage options available under OCGA § 33-7-11 (a) (1), because it raises merely a conjecture or possibility of that fact. See *Morgan v. Braasch*, 214 Ga. App. 82, 84 (2) (446 SE2d 746) (1994); see also *John Hewell Trucking Co. v. Brock*, 239 Ga. App. 862, 864 (522 SE2d 270) (1999) ("Guesses or speculation which raise merely a conjecture or possibility are not sufficient to create even an inference of fact for consideration on summary judgment.") (citation and punctuation omitted). Given that OCGA § 33-7-11 is remedial in nature and must be "broadly construed to accomplish the legislative purpose," *Wagner v. Nationwide Mut. Fire Ins. Co.*, 288 Ga. App. 132, 133 (653 SE2d 526) (2007), we are not persuaded by IDS's argument that the inclusion of a facially-noncompliant provision in the policy, alone, is evidence of the affirmative choice required to bring that provision into compliance with the statute so as to avoid the statute's default amount. Consequently, we construe the February 2007 policy to provide UM coverage in the higher amount equal to the policy's bodily injury liability

7

coverage, notwithstanding the specification of a lesser amount on the declarations page.

Because the February 2007 policy, by default, provided this higher amount of UM coverage, IDS could not "renew" that policy with a lesser amount of coverage. See OCGA § 33-24-45 (b) (2) (renewal must provide "no less than the coverage contained in the superseded policy"). The superseding policies, therefore, would also provide the higher default amount of UM coverage unless McGraw affirmatively chose the lesser amount. The amount of coverage specified on the declarations pages of those superseding policies does not demonstrate that McGraw made the required choice, as explained above. Likewise, the fact that McGraw failed to return the election form sent to him in December 2008 also does not show that he made an *affirmative* choice to receive UM coverage less than the statutory default amount; it merely reflects McGraw's failure to act. Cf. *Hopson v. Kennestone Hosp.*, 241 Ga. App. 829, 831 (526 SE2d 622) (1999) (psychiatric patient's failure to oppose discovery requests for communications with psychiatrist was not an affirmative action waiving privileged nature of those communications).

In summary, the undisputed evidence in this case does not show that McGraw made an affirmative choice for less UM coverage than the statutory default amount

8

set forth in OCGA § 33-7-11 (a) (1) (B). Accordingly, the statutory default amount of coverage applied to the policy, and the trial court erred in construing the policy to provide a lesser amount of coverage. The court thus erred in granting summary judgment to IDS and denying partial summary judgment to McGraw.

*Judgment reversed. Doyle, P. J., and Boggs, J., concur.*

9