**FIRST DIVISION**
**BARNES, P. J.,**
**RICKMAN and SELF, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**May 16, 2017**

# In the Court of Appeals of Georgia

A17A0020.  GOVERNMENT EMPLOYEES INSURANCE COMPANY v. MORGAN et al.

BARNES, Presiding Judge.

The issue in this appeal is the amount of uninsured/underinsured motorist ("UM") coverage available to Wanda and Victor Morgan under their automobile insurance policy with Government Employees Insurance Company ("GEICO"). The trial court ruled that the policy provided the Morgans with the default amount of UM coverage set forth in OCGA § 33-7-11 (a) (1) – an amount equal to their policy's liability limit of $100,000 per person – because there is no evidence that they affirmatively chose a lower amount of coverage. GEICO challenges this ruling, arguing that the Morgans selected the statutory minimum UM coverage of $25,000 per person. For reasons that follow, we affirm.

The record shows that on November 8, 2012, Wanda Morgan was injured in a motor vehicle collision caused by Dwain Mims. Wanda Morgan alleges that she has

suffered damages totaling more than $100,000 to date, and her husband Victor Morgan asserts a claim for loss of consortium. Mims was covered under an automobile insurance policy that had a liability limit of $25,000 per person. In response to a demand from the Morgans, Mims's insurer tendered a check for $25,000. The Morgans were covered under an automobile insurance policy issued by GEICO that had a liability limit of $100,000 per person. The policy also included UM coverage. The Morgans demanded $100,000 from GEICO in UM coverage under their policy. GEICO, however, tendered a check for $25,000, which it alleges is the per-person limit of the Morgans' UM coverage under the policy.

The Morgans filed a personal injury action against Mims, and they served GEICO as their UM carrier. GEICO answered and counterclaimed for a declaratory judgment that the Morgans' UM coverage was limited to $25,000. Following discovery, GEICO filed a motion for summary judgment. The trial court entered an order denying GEICO's motion and ruling as a matter of law that the Morgans' policy provided UM coverage with a limit of $100,000 per person. We granted GEICO's application for interlocutory review, and this appeal followed.

1. GEICO argues that the relevant undisputed facts and applicable law show that the Morgans' UM coverage was limited to $25,000 per person and that the trial court erred by ruling otherwise. We disagree.

The record shows that the Morgans first purchased the policy in 1986. In 1991, they completed an optional coverages selection form provided by GEICO indicating their wish to include UM coverage on the policy. The form listed several available UM coverage options, and the Morgans checked a box designating the amount of coverage they wanted. In 1992, they discontinued that coverage, completing another selection form indicating that they rejected UM coverage "entirely." In February 2000, and again in January 2003, the Morgans completed additional selection forms confirming that GEICO had offered them UM coverage at various policy limits, but they had rejected any coverage.

In August 2003, the Morgans made several changes to their GEICO policy, including adding UM coverage back to the policy. They did not complete an optional coverage selection form in connection with the addition of UM coverage. GEICO has no record of the Morgans' 2003 request for UM coverage, but GEICO believes it "was probably by telephone," though it "could have been by Internet." The Morgans submitted affidavits stating that when they added UM coverage, GEICO did not

3

explain to them, "verbally or otherwise," that they could select coverage in an amount equal to their policy's liability limits.[1] GEICO renewed the policy every six months thereafter, and the Morgans completed no selection forms in connection with these renewals. The declarations page of the policy in effect at the time of Wanda Morgan's accident indicates that the policy provided UM coverage with a limit of $25,000 per person.

Georgia law requires insurers to provide UM coverage in automobile insurance policies unless the insured rejects the coverage in writing. See OCGA § 33-7-11 (a) (1), (3); *Tice v. Am. Employers' Ins. Co.*, 275 Ga. App. 125, 125-126 (619 SE2d 797) (2005). Before 2002, an insurer was obligated to provide UM coverage only at a statutory minimum level, unless the insured requested greater coverage in writing.[2] *Tice*, 275 Ga. App. at 126. In 2001, the legislature amended OCGA § 33-7-11 (a) (1)

---

[1] The Morgans' affidavits provide no further information about their 2003 request for UM coverage or their communications with GEICO concerning the request.

[2] When the Morgans first purchased their policy, the statutory minimum UM coverage was $15,000 per person. See *Tice*, 275 Ga. App. at 126 and n.3, citing OCGA § 33-7-11 (a) (1) (A), (B), as amended by Ga. L. 1978, p. 1896, § 1, and by Ga. L. 1984, pp. 839-840, § 1. In 2000, the legislature amended the UM statute to raise the minimum amount of UM coverage to its current amount – $25,000 per person. *Tice*, 275 Ga. App. at 126 and n.7, citing Ga. L. 2000, pp. 1516-1517, § 1.

("Subsection (a) (1)") to "require[] insurance policies issued in Georgia to contain provisions for UM coverage which at the option of the insured shall be (i) not less than $25,000 per person, or (ii) equal to the policy's bodily injury liability insurance coverage, if higher than $25,000 per person." (Footnote omitted.) *Infinity Gen. Ins. Co. v. Litton*, 308 Ga. App. 497, 499 (2) (707 SE2d 885) (2011).[3] "[T]he 2001 amendment was intended to make a policy's liability limits the default provision for UM coverage, unless an insured affirmatively elects UM coverage in a lesser amount." *Soufi v. Haygood*, 282 Ga. App. 593, 595 (639 SE2d 395) (2006). The 2001 amendment to Subsection (a) (1) applies to "policies issued or renewed on or after January 1, 2002." *Tice*, 275 Ga. App. at 126; see also Ga. L. 2001, p. 1228, § 3. The Morgans' policy, as noted, was issued before January 1, 2002, but renewed many times thereafter.

---

[3] Subsection (a) (1), as amended, provides in pertinent part: "No automobile liability policy . . . shall be issued or delivered in this state . . . unless it contains an endorsement or provisions undertaking to pay the insured damages for bodily injury, loss of consortium or death of an insured . . . under the named insured's policy sustained from the owner or operator of an uninsured motor vehicle, within limits exclusive of interests and costs which *at the option of the insured* shall be: (A) Not less than $25,000 because of bodily injury to or death of one person in any one accident, . . . or (B) Equal to the limits of liability because of bodily injury to or death of one person in any one accident[.] . . . In any event, *the insured may affirmatively choose* uninsured motorist limits in an amount less than the limits of liability." (Emphasis supplied). OCGA § 33-7-11 (a) (1).

Subsection (a) (1) contains no specific requirement that an insured's affirmative election of a lesser amount of UM coverage must be made in writing. *Lambert v. Alfa Gen. Ins. Corp.*, 291 Ga. App. 57, 60 (660 SE2d 889) (2008).[4] Nevertheless,

> the lack of a writing requirement does not absolve [the insurer] of its burden of showing that [the insured] *did* in fact make an affirmative choice of lesser coverage in support of its position that the term setting forth lesser coverage should be enforced instead of the statutory default coverage.

(Citation omitted; emphasis in original.) *McGraw v. IDS Property & Cas. Ins. Co.*, 323 Ga. App. 408, 410-411 (744 SE2d 891) (2013). An automobile insurance policy that provides UM coverage with a lower limit than the liability limit, "without the insured having affirmatively chosen that lesser amount," is "not in compliance" with Subsection (a) (1). Id. at 410. "In such instance, the requirements of the statute control over the terms of the policy," and the policy must be construed to provide the statutory default amount of UM coverage. (Citations omitted.) Id. at 410-411.

---

[4] As before 2002, an insured may opt out of UM coverage entirely, but such an election must be in writing. *Lambert*, 291 Ga. App. at 60, citing OCGA § 33-7-11 (a) (3).

6

(a) GEICO contends that the Morgans' written rejections of UM coverage in 1992, 2000, and January 2003 – shown on their completed optional coverages selection forms – limit their UM claim to the statutory minimum coverage amount of $25,000. GEICO cites OCGA § 33-7-11 (a) (3) ("Subsection (a) (3)"), which provides in relevant part that UM coverage "need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with a policy previously issued to said insured by the same insurer." GEICO interprets this language to mean that Subsection (a) (1) offers an insured a "one-time option" of obtaining UM coverage either at the $25,000 statutory minimum or at an amount equal to the policy's liability coverage limits. In essence, GEICO argues that if an insured declines UM coverage at any point, Subsection (a) (1) no longer applies for the duration of the policy, even if the insured later chooses to add UM coverage to the policy. We reject this argument.

In *Merastar Ins. Co. v. Wheat*, 220 Ga. App. 695 (469 SE2d 882) (1996), we interpreted Subsection (a) (3) as an exception to Subsection (a) (1)'s requirement that an insurer offer UM coverage each time a policy is issued or delivered. Id. at 696 (1). Under this exception, "[o]nce an insured has exercised the opportunity to reject [UM] coverage, the insurer is under no further duty or obligation to offer the coverage,

7

*absent a request*, for the life of the policy." (Emphasis supplied). Id. Thus, Subsection (a) (3) relieves an insurer of the "administrative burden" of obtaining a fresh written rejection of UM coverage for every renewal period from an insured who has already rejected that coverage in writing. Id.

But the exception set forth in Subsection (a) (3) applies only "*absent a request*" for UM coverage. (Emphasis supplied.) *Merastar Ins. Co.*, 220 Ga. App. at 695. The exception does not apply where, as here, an insured who previously rejected UM coverage later requests that UM coverage be added to the policy. As we explained in *Tice*, Subsection (a) (1) requires the insurer to provide the statutory default amount of UM coverage "*when the insured elects UM coverage,*" unless the insured affirmatively chooses a lesser amount. (Emphasis supplied.) 275 Ga. App. at 127. Nothing in Subsection (a) (1) or Subsection (a) (3) makes the default provision a "one-time option," as GEICO contends. Rather, the default provision applies *whenever* the insured obtains UM coverage, whether that occurs when the insured first buys the policy or when the insured requests UM coverage at some later date – unless the insured affirmatively chooses a lower limit.

8

(b) We now turn to the question of whether the Morgans affirmatively chose a $25,000 limit when they requested UM coverage in 2003. GEICO cites two pieces of evidence to support its argument that the Morgans chose the statutory minimum.

i. First, GEICO contends that the Morgans admitted in discovery that they chose the statutory minimum. GEICO's Request for Admissions No. 21 asked the Morgans to admit the following: "On the posting date of August 4, 2003, and for an effective date of August 17, 2003, the Morgans effected a number of changes in their policy, including . . . uninsured motorist coverage was added in the statutory minimum coverage amounts of $25,000/$50,000/$25,000." The Morgans responded, "Admitted." According to GEICO, that admission conclusively settles any dispute regarding the amount of coverage.

The Civil Practice Act permits a party to serve on another party a written request for the admission of matters "that relate to statements or opinions of fact or of the application of law to fact." OCGA § 9-11-36 (a) (1). "Any matter deemed admitted under this Code section is conclusively established unless the court, on motion, permits withdrawal or amendment of the admission." OCGA § 9-11-36 (b). But a matter is conclusively established only "[i]f a response to a request for admission is unambiguous, and is not subject to different meanings." 27 C.J.S. *Discovery* § 174 n.1

9

(2017). Under the circumstances presented here, the Morgans' response to Request No. 21 did not constitute an admission that their policy provides the statutory minimum amount of UM coverage.

As the Morgans point out, their response can be interpreted as admitting only that the UM limits listed in GEICO's declarations page were $25,000/$50,000/$25,000 – not that those listed limits actually govern the policy. The Morgans' responses to GEICO's other requests for admission in the same discovery filing support this interpretation. GEICO's Request for Admission No. 22 – the very next request – asked the Morgans to admit that in effecting the changes described in Request No. 21, the Morgans "affirmatively chose uninsured motorist coverage limits in an amount less than the limits of liability coverage" under the policy. The Morgans responded, "Denied." Similarly, in Request No. 11, GEICO asked the Morgans to admit that in August 2003, they affirmatively chose to add UM coverage in minimum limits to their policy. The Morgans responded:

> Denied. In August of 2003, Plaintiffs added uninsured motorist coverage to their policy, but were not given the option of adding it in an amount equal to the $100,000.00 liability policy limits. As such, Plaintiffs did not "affirmatively choose" to add uninsured motorist insurance coverage (in minimum limits of $25,000.00 per person for bodily injury and/or death).

10

These clear denials of any affirmative choice preclude us from interpreting the Morgans' response to Request No. 21 as an unambiguous concession that GEICO's UM obligation is limited to $25,000.

ii. GEICO also points to the declarations page of the policy that was in effect at the time of the accident, which lists the limit of UM coverage as $25,000 per person. The declarations page, however, "cannot support an inference that [the Morgans] made an *affirmative* choice among the various UM coverage options available under OCGA § 33-7-11 (a) (1), because it raises merely a conjecture or possibility of that fact." (Citations omitted.) *McGraw*, 323 Ga. App. at 411. Applying this principle in *McGraw*, we held that a declarations page showing a UM limit less than the bodily injury limit, standing alone, was insufficient to demonstrate an affirmative choice of a lesser amount of coverage. Id. Here, as in *McGraw*, there is no evidence that the Morgans affirmatively chose a UM limit lower than the default amount. Accordingly, the trial court did not err by construing the policy to provide UM coverage in an amount equal to the policy's bodily injury liability coverage. See id.

2. GEICO's motion to strike the amicus curiae brief of the Georgia Trial Lawyers Association is denied.

*Judgment affirmed. Self and Rickman, JJ., concur.*

11