[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-11122
Non-Argument Calendar
_____

D.C. Docket No. 1:17-cv-04328-WMR


STATE AUTO PROPERTY AND CASUALTY INSURANCE COMPANY,

Plaintiff-Appellee,

versus

SCOTT JACOBS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(October 18, 2019)

Before TJOFLAT, MARCUS, and ROSENBAUM, Circuit Judges.

PER CURIAM:

I.

An underinsured motorist injured Scott Jacobs in a car accident.  State Auto, Jacobs's insurer, sought a declaratory judgment establishing that Jacobs's insurance policy included only $25,000 in underinsured motorist coverage.

The District Court awarded State Auto summary judgment.  Jacobs then filed a post-judgment motion for reconsideration, which the Court denied.  Jacobs appeals the Court's order granting State Auto summary judgment and its denial of his motion for reconsideration.  We affirm.

II.

This is a case about car insurance.  Car insurance policies protect policyholders in various ways.  One aspect of a car insurance policy is bodily injury liability coverage.  This protects the policyholder if he injures someone else with his car.  Another aspect is underinsured motorist ("UM") coverage.  This protects the policyholder if an underinsured motorist injures the policyholder and the underinsured motorist's insurance is inadequate to fully remedy the policyholder's injuries.  Georgia regulates these policies by statute.

By default, the Georgia statute[1] sets UM coverage equal to the policy's

bodily injury liability coverage.  *Infinity Gen. Ins. Co. v. Litton*, 707 S.E.2d 885,

887 (Ga. Ct. App. 2011).  For example, if a policy is silent regarding UM

coverage, and the policy provides $100,000 in bodily injury liability coverage, then

the statute requires the insurer to provide $100,000 in UM coverage.

This statutory default applies unless "an insured affirmatively elects UM

coverage in a lesser amount."  *Id.* (quoting *Soufi v. Haygood*, 639 S.E.2d 395, 397

(Ga. Ct. App. 2006)).  For example, a policyholder can affirmatively request bodily

injury liability coverage of $100,000 and UM coverage of $50,000.  Absent such

an affirmative choice by the policyholder, a policy which purports to provide less

UM coverage than the policy's bodily injury liability coverage violates the statute.

*McGraw v. IDS Prop. & Cas. Ins. Co.*, 744 S.E.2d 891, 893 (Ga. Ct. App. 2013).

---

[1] The statute, Ga. Code Ann. § 33-7-11(a)(1), provides:

No automobile liability policy . . . shall be issued or delivered in this state . . . unless it contains an endorsement or provisions undertaking to pay the insured damages for bodily injury, loss of consortium or death of an insured, or for injury to or destruction of property of an insured under the named insured's policy sustained from the owner or operator of an uninsured [or underinsured] motor vehicle, within limits exclusive of interests and costs which at the option of the insured shall be:

. . . .

    (B) Equal to the limits of liability because of bodily injury to or death of one person in any one accident and of two or more persons in any one accident, and because of injury to or destruction of property of the insured which is contained in the insured's personal coverage in the automobile liability policy . . . issued by the insurer to the insured if those limits of liability exceed [$25,000].  In any event, the insured may affirmatively choose uninsured [and underinsured] motorist limits in an amount less than the limits of liability.

In such circumstances, the statutory default—the policy's bodily injury liability limit—applies instead of the terms of the policy. *Id.*

The first question in this appeal is whether Jacobs affirmatively chose to have a policy with less UM coverage than the policy's bodily injury liability coverage. The District Court concluded that Jacobs affirmatively chose UM coverage of $25,000 because he signed and submitted an application specifically requesting that amount of UM coverage, and the application included a disclaimer that UM coverage options had been offered and explained to him. We agree and, therefore, affirm the Court's order granting State Auto summary judgment.[2]

The second question in this appeal is whether the District Court properly denied Jacobs's post-judgment motion for reconsideration, in which he reasserted his prior arguments and added additional legal arguments and evidence. We conclude that the District Court did not abuse its discretion in denying the motion because the evidence and arguments Jacobs presented were available to him before

---

[2] To the extent that Jacobs also argues that his insurance policy was ambiguous and procedurally unconscionable, he raised those issues for the first time on appeal. We do not address them here because no exceptional circumstances here warrant our consideration of these arguments. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1332 (11th Cir. 2004) (listing five exceptional conditions that warrant appellate review of issues raised for the first time on appeal: (1) pure questions of law; (2) the appellant had no opportunity to raise the objection at trial; (3) the interests of substantial justice are at stake; (4) "the proper resolution of the issue is beyond any doubt;" and (5) the issue presents "significant questions of general impact or of great public concern").

4

the Court entered judgment, which rendered his motion meritless.  We therefore affirm.

### III.

We first address whether Jacobs affirmatively chose to have less UM coverage than bodily injury liability coverage.  We agree with the District Court that he did.

In a diversity case such as this one, a district court applies the substantive law of the forum state and adheres generally to the decisions of the state's intermediate appellate courts.  *Davis v. Nat'l Med. Enters.*, 253 F.3d 1314, 1319 n.6 (11th Cir. 2001).  We review a district court's determination of state law *de novo*.  *Id.* at 1319.  We also review *de novo* a district court's grant of summary judgment, applying the same standard used by the court and viewing all evidence and reasonable factual inferences in the light most favorable to the non-moving party.  *Burton v. Tampa Hous. Auth.*, 271 F.3d 1274, 1276–77 (11th Cir. 2001).

When an insurer attempts to provide less UM coverage than a policy's bodily injury liability limit, it bears the burden of proving that the policyholder made an affirmative choice of lesser UM coverage.  *Gov't Emps. Ins. Co. v. Morgan*, 800 S.E.2d 612, 615 (Ga. Ct. App. 2017).  Here, Jacobs submitted a signed application to State Auto which specifically requested $25,000 in UM coverage.  The application also included the following disclaimer: "I

5

UNDERSTAND AND ACKNOWLEDGE THAT UNINSURED MOTORISTS COVERAGE HAS BEEN OFFERED AND EXPLAINED TO ME.  I HAVE SELECTED THE LIMITS AND DEDUCTIBLE OPTIONS SHOWN IN THIS APPLICATION."  Based on this unambiguous contractual language and its review of relevant Georgia cases, the District Court awarded State Auto summary judgment, finding that Jacobs had affirmatively chosen $25,000 in UM coverage by signing and submitting his insurance application.  We find no error in the District Court's judgment.

We must examine three Georgia cases to resolve whether Jacobs's choice qualifies as "affirmative" under the statute.  While each case is somewhat helpful in sketching the contours of how Georgia courts would resolve this dispute, none of them directly dictate the outcome in this case.  We address each in turn.

In *Lambert v. Alfa General Ins. Corp.*, 660 S.E.2d 889 (Ga. Ct. App. 2008), the policyholder signed and delivered a written statement requesting that his UM coverage be reduced before his policy was renewed.  *Id.* at 892.  The Court found the statement to be sufficient evidence that the policyholder affirmatively chose to reduce his UM coverage.  *Id.*

Based on the facts here, *Lambert* is not directly applicable.  It is true that both cases involved signed documents.  However, the signed statement in *Lambert* was a request written by the policyholder, himself, for a specific change in

6

coverage under an existing policy. Here, Jacobs's signature was on an application for new coverage, and he claims that he did not select the coverage amounts himself—he asserts that the coverage amounts were pre-filled by State Auto. Therefore, the facts here are more favorable to Jacobs than those in *Lambert* because it is less clear that he personally and specifically intended to choose lesser UM coverage, and the case is potentially distinguishable because the election of coverage was in an application rather than in a separate, written statement.

Although we find that *Lambert* was a clearer case, we find that Jacobs affirmatively chose his UM coverage here. Jacobs signed and submitted an application that requested a specific amount of UM coverage, and stated that he understood his UM coverage options and selected the coverage amounts. It does not matter that Jacobs claims the form was pre-filled because, under Georgia law, Jacobs had a duty to read and understand the policy. *See Cotton States Mut. Ins. Co. v. Coleman*, 530 S.E.2d 229, 231 (Ga. Ct. App. 2000) ("An insured who can read is required to read the policy and is presumed to have understood its contents."). The contract specifically states that he understood and selected the coverages and their amounts. Therefore, based on the facts of this case, it is immaterial that Jacobs's signature and election came in an allegedly pre-filled application rather than a separate, written statement. *See also Rangel v. Vega-Ortiz*, 200 So. 3d 1013, 1021 (La. Ct. App. 2016) (concluding, under Georgia law,

that waiver of UM coverage was valid even though the "rejection" option on the waiver form was pre-filled, and finding that this did *not* deprive the policyholder of "a real choice in the matter").

In *McGraw*, the policyholder signed an application that did not refer to UM coverage in any respect.  744 S.E.2d at 892.  The declarations page reflected UM coverage in an amount less than the bodily injury liability coverage.  *Id.*  The insurer issued superseding policies to the policyholder every six months that reflected this lower UM coverage.  *Id.*  The Court found that the policyholder had not affirmatively chosen a lesser amount of UM coverage because: (1) the signed application did not mention UM coverage; and (2) it would be speculative to infer that the policyholder affirmatively chose to receive lower UM coverage based *solely* on unsigned declarations pages that specified a lower coverage amount.  *Id.* at 894.  The Court concluded that "the inclusion of a facially-noncompliant provision in the policy, alone, is [insufficient] evidence of the affirmative choice required" by the statute.  *Id.*

*McGraw*, however, does not resolve the case before us because the signed application there did not refer to UM coverage at all—only the declarations page did.  Here, Jacobs submitted a signed, facially-compliant application which specified the requested amount of UM coverage.  Therefore, State Auto is not solely relying on unsigned declarations pages.

8

Similarly, in *Morgan*, policyholders added UM coverage to an existing policy before an accident occurred. 800 S.E.2d at 614. The insurer tendered UM coverage to the policyholders based on the amount reflected in the declarations page of the policy, which was less than the amount of the policy's bodily injury liability limit. *Id.* at 613–14. The insurer had no record of the policyholders' request for added UM coverage, and the policyholders submitted affidavits stating that the insurer did not explain that they could obtain coverage equal to the policy's bodily injury liability limit. *Id.* at 614. Relying on *McGraw*, the Court found that the declarations page, standing alone, was insufficient to demonstrate an affirmative choice of UM coverage in an amount lower than the statutory default. *Id.* at 616.

Like *McGraw*, *Morgan* does not control the outcome of this case because State Auto is not relying solely on unsigned declarations pages. Nonetheless, Jacobs asserts that *Morgan* implies an affirmative duty on insurers to explain to a policyholder or policy applicant his UM coverage options. Even if *Morgan* does imply such a duty—and we do not decide that issue here—the duty would not be violated in Jacobs's case because he signed an application which (1) requested a specific amount of UM coverage, (2) stated that UM coverage had been offered and explained to him, and (3) stated that he selected the coverages and amounts

9

contained therein.  As noted above, Georgia law binds Jacobs to his contractual statements.  *See Coleman*, 530 S.E.2d at 231.

In light of the foregoing, the District Court did not err when it awarded State Auto summary judgment.

IV.

We next address whether the District Court abused its discretion in denying Jacobs's post-judgment motion for reconsideration.  We conclude that it did not.

A timely motion for reconsideration regarding the substantive merits of a judgment ordinarily will be deemed a motion to alter or amend a judgment pursuant to Federal Rule of Civil Procedure 59(e) regardless of how the party filing the motion characterizes it.  *Finch v. City of Vernon*, 845 F.2d 256, 258–59 (11th Cir. 1988).  For instance, if a party seeks relief by requesting that a district court's summary judgment ruling be set aside, the motion is properly characterized as a motion to alter or amend judgment.  *Mays v. U.S.P.S.*, 122 F.3d 43, 46 (11th Cir. 1997).  We review a district court's denial of a motion to alter or amend judgment for abuse of discretion.  *Id.*

The only grounds for granting a motion to alter or amend judgment under Rule 59(e) are "newly discovered evidence or manifest errors of law or fact." *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (quoting *In re Kellogg*, 197 F.3d 1116, 1119 (11th Cir. 1999)).  A Rule 59(e) motion cannot be used to raise

10

arguments or present evidence that could have been raised before the entry of judgment. *Id.* Thus, when a party attempts to introduce previously unsubmitted evidence in a motion for reconsideration, the party must also show that the evidence was not available before the entry of judgment. *Mays*, 122 F.3d at 46.

The District Court did not abuse its discretion in denying Jacobs's motion for reconsideration, which we construe as a motion to alter or amend the judgment under Rule 59(e). *See id.*; *Finch*, 845 F.2d at 258–59. Jacobs did not allege—and there was no evidence indicating—that the additional evidence and legal arguments that he presented to the District Court in his motion for reconsideration were unavailable before the entry of judgment, and there was no manifest error of law or fact in the District Court's summary judgment ruling. Accordingly, because Jacobs had an opportunity to raise the issues in his motion before judgment and failed to do so, the District Court properly denied his motion for reconsideration.

**AFFIRMED.**