**FIRST DIVISION**
**BROWN, C. J.,**
**BARNES, P. J., and WATKINS, J.**

**NOTICE:** **Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 16, 2026**

# In the Court of Appeals of Georgia

A25A1720. SULLIVAN v. TRUSTGARD INSURANCE COMPANY.

WATKINS, Judge.

Stephen Michael Sullivan seeks to establish uninsured motorist ("UM") coverage from Trustgard Insurance Company in the amount of $1 million, which is the liability limit of the commercial auto policy at issue. Trustgard counters that the UM policy limit is $100,000. On cross-motions, the parties moved for partial summary judgment, and the trial court granted partial summary judgment to Trustgard and denied partial summary judgment to Sullivan. For the reasons contained herein, we reverse.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a grant or denial

of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[1]

So viewed, the record shows that Brittany Singletary was driving on Interstate 285 when she rear-ended Sullivan's car which was insured by Trustgard under a policy of insurance issued to Sullivan's company, Southeast Sealing, Inc. Sullivan sustained injuries as a result of this crash which continue to persist. Sullivan sued Singletary, she tendered her policy limits, and the case proceeded against Trustgard for UM benefits.

Prior to this accident, Sullivan, on behalf of Southeast Sealing, applied to Trustgard through an independent broker for a commercial auto policy. Trustgard provided a quote, which indicated that it "could be modified or declined[,]" for a policy with a $1 million liability limit and a $100,000 UM limit. Trustgard then emailed Sullivan an application that had been pre-populated for a policy with a $1 million liability limit and a $100,000 UM limit. There was nowhere designated on the application for Sullivan to identify a different amount of UM coverage.

---

[1] *Newton v. Jacobs*, 358 Ga. App. 180, 181 (854 SE2d 359) (2021) (citations and punctuation omitted).

At the end of the application was a section which read "UNINSURED AND UNDERINSURED MOTORIST COVERAGES (Check the appropriate box(es) below and sign where applicable[.]" It then provided options for the applicant to select by signature the UM limits included in the application or to reject UM bodily injury and/or property damage coverage. Notably, this portion of the application provided that this section was not to be used in Georgia; instead a "SPECIFIC STATE SUPPLEMENT" was to be used. This section is unsigned.

Sullivan contends that no state specific supplement was attached to or contained in the application. Trustgard points to a document that references Southeast Sealing which Trustgard claims was provided to Sullivan titled "TRADITIONAL AND NEW UNINSURED MOTORIST COVERAGE MANDATORY OFFER AND EXPLANATION[.]" This document describes UM coverage options: one that would be reduced by At-Fault Liability Limits ("Traditional Uninsured Motorist Coverage") and another that would be added on to At-Fault Liability Limits ("New Uninsured Motorist Coverage"). The document provides "You have the right to purchase Traditional Uninsured Motorist Coverage or New Uninsured Motorist Coverage, if applicable, with limits up to the liability

limits of your policy." The document provides spaces to select by initials one of these types of UM coverage or to reject all UM coverage. This document contains no initials or signatures.

Trustgard issued a policy which indicates on its declarations page that it provides a $1 million liability limit and a $100,000 UM limit. The trial court granted Trustgard's motion for partial summary judgment, finding that the policy provided $100,000 in UM coverage, and denied Sullivan's cross-motion. Sullivan filed the instant appeal.

In two related claims of error, Sullivan alleges that the trial court erred in its finding that the UM policy limit was $100,000. We agree.

We start our analysis by acknowledging that

> uninsured motorist statutes are remedial in nature and must be broadly construed to accomplish the legislative purpose. That "legislative purpose" is to require some provision for first-party insurance coverage to facilitate indemnification for injuries to a person who is legally entitled to recover damages from an uninsured motorist, and thereby to protect innocent victims from the negligence of irresponsible drivers.[2]

---

[2] *Travelers Home & Marine Ins. Co. v. Castellanos*, 297 Ga. 174, 177-78(1) (773 SE2d 184) (2015) (citations and punctuation omitted).

To that end, since 2001, "OCGA § 33-7-11(a)(1) [has] ... require[d] insurance policies issued in Georgia to contain provisions for UM coverage which at the option of the insured shall be (i) not less than $25,000 per person, or (ii) equal to the policy's bodily injury liability insurance coverage, if higher than $25,000 per person."[3] "This Code section was intended to make a policy's liability limits the default provision for UM coverage, unless an insured *affirmatively [chooses]* UM coverage in a lesser amount."[4]

While OCGA § 33-7-11(a)(3) provides that an insured can reject all UM coverage in writing, subsection (a)(1) does not define how an insured can "affirmatively choose" UM coverage in an amount lower than the liability policy limits. The statute

> contains no specific requirement that an insured's affirmative election of a lesser amount of UM coverage must be made in writing. Nevertheless, the lack of a writing requirement does not absolve the insurer of its burden of showing that the insured *did* in fact make an affirmative choice of lesser coverage in support of its position that the

---

[3] *Gov't Employees Ins. Co. v. Morgan*, 341 Ga. App. 396, 398(1) (800 SE2d 612) (2017) (citation and punctuation omitted).

[4] *Infinity Gen. Ins. Co. v. Litton*, 308 Ga. App. 497, 499(2) (707 SE2d 885) (2011) (citation and punctuation omitted; emphasis added).

5

term setting forth lesser coverage should be enforced instead of the statutory default coverage.[5]

"[W]hen a vehicle insurance policy limits UM coverage to an amount less than the policy's ... liability limits without the insured having affirmatively chosen that lesser amount, the policy is not in compliance with OCGA § 33–7–11(a)(1). In such instance, the requirements of the statute control over the terms of the policy."[6]

Here, we conclude that Trustgard has not met its burden of establishing that Sullivan made an affirmative choice, on behalf of Southeast Sealing, for UM coverage in an amount less than the policy's liability limits. The quote and the application Trustgard provided to Southeast Sealing were pre-populated with a lower UM limit, and there was no obvious way for the insured to modify this amount on the application form. Even assuming Southeast Sealing did receive the document Trustgard identifies as the "state specific supplement[,]" the places for the insured to specifically initial and sign a UM coverage election are blank. While Southeast Sealing's broker testified

---

[5] *Morgan*, 341 Ga. App. at 399 (1) (citations and punctuation omitted).

[6] *McGraw v. IDS Prop. & Cas. Ins. Co.*, 323 Ga. App. 408, 410 (744 SE2d 891) (2013) (citations and punctuation omitted).

that it was part of his "custom and practice" to explain UM coverage to a representative of Southeast Sealing, he did not testify that Sullivan or anyone on behalf of Southeast Sealing affirmatively requested a lower UM limit in writing or otherwise.

We disagree with Trustgard's argument that Sullivan's execution of the application on behalf of Southeast Sealing was an act of affirmatively choosing lower UM limits. It is true that "an insured who can read is required to read the policy and is presumed to have understood its contents."[7] The General Assembly, however, has treated UM coverage different than other coverage types by requiring an affirmative choice of lower limits. Indeed, we have previously held that provision of a declarations page to an insured providing for lower UM limits "cannot [alone] support an inference that the [insured] made an affirmative choice among the various UM coverage options available under OCGA § 33-7-11(a)(1), because it raises merely a conjecture or possibility of that fact."[8]

---

[7] *Cox v. S. Guar. Ins. Co.*, 254 Ga. App. 776, 777(1) (563 SE2d 882) (2002) (citation and punctuation omitted).

[8] *Morgan*, 341 Ga. App. a t401–02 (1)(b)(ii) (citation and punctuation omitted).

In all interpretations of statutes, the courts shall look diligently for the intention of the General Assembly. When the language of a statute is plain and unambiguous and not leading to an absurd result, it evidences the legislative intent which is not to be contravened. We also must endeavor to give each part of the statute meaning and avoid constructions that make some language mere surplusage or meaningless.[9]

Prior to 2001, OCGA § 33-7-11 provided that "the insurer was not required to issue any coverage for any amount greater than the minimum coverage unless the insured requested in writing such higher limits[.]"[10] In our search for the General Assembly's intent, we note that its amendment to the statute deleted this proviso, so that instead of requiring an affirmative request for policy limit UM coverage, now an insured must affirmatively choose UM coverage less than liability policy limits.

In light of the remedial nature of the statute, we hold that receipt of an insurance quote providing for lower UM limits selected by the insurer, execution of an application with pre-populated UM limit amounts with no disclaimer that the insured selected the UM coverage limits, and receipt of a policy demonstrating lower

---

[9] *Ne. Ga. Cancer Care, LLC v. Blue Cross & Blue Shield of Ga., Inc.*, 315 Ga. App. 521, 526 (1)(a) (726 SE2d 714) (2012) (citations and punctuation omitted).

[10] *Tice v. Am. Employers' Ins. Co.*, 275 Ga. App. 125, 127 (619 SE2d 797) (2005).

UM limit amounts does not meet an insurer's burden of demonstrating an affirmative choice of lesser coverage. Again, notably, Trustgard contends it provided Southeast Sealing with a form explaining and providing space for explicit election of a UM coverage option, but that form is unsigned. Moreover, that form makes no reference to an election of lower UM limits.[11]

---

[11] The facts of this case are distinguishable from cases where this Court concluded that the insured made an affirmative choice for lesser UM coverage. In *Jones v. Ga. Farm Bureau Mutual Ins. Co.*, 367 Ga. App. 35, 36 (885 SE2d 13) (2023), the insured had signed his name under the statement "I affirmatively choose Uninsured Motorist Limits in an amount less than the Limit of Liability for Bodily Injury and Property Damage Coverage." In *Cline v. Allstate Prop. & Cas. Ins.*, 354 Ga. App. 415, 416 (841 SE2d 63) (2020), the insured had completed a form changing her UM coverage limits from being equal to her liability limits to a lesser amount. In its brief, Trustgard also cites to two unpublished federal cases applying Georgia law. In *Travelers Prop. Cas., Co. of Am. v. Hardee*, No. CV 322-004, (SD Ga. Sept. 12, 2023) (unpublished), the federal district court for the Southern District of Georgia found that an insured's prior written election of lower UM limits constituted an affirmative choice for subsequent renewal policies. The United States Court of Appeals for the Eleventh Circuit found an insured made an affirmative choice for lower coverage limits in the case of *State Auto Prop. & Cas. Ins. Co. v. Jacobs*, 791 FApp'x 28, slip op. at 14 (11th Cir. 2019) (unpublished). There, as here, the application was pre-filled out by the insurance company, but that application had a disclaimer which provided "I UNDERSTAND AND ACKNOWLEDGE THAT UNINSURED MOTORISTS COVERAGE HAS BEEN OFFERED AND EXPLAINED TO ME. I HAVE SELECTED THE LIMITS AND DEDUCTIBLE OPTIONS SHOWN IN THIS APPLICATION." The application at issue here has no such affirmation of the UM limit selected. Moreover, as the district court noted in that case, the insured represented to State Auto's insurance agent that he wanted the lower UM coverage limit contained in the application. *State Auto Prop. & Cas. Ins. Co. v. Jacobs*, No. 1:17-

Accordingly, the trial court erred in granting partial summary judgment to Trustgard and in denying partial summary judgment to Sullivan.

*Judgment reversed. Brown, C. J., and Barnes, P. J., concur.*

---

CV-04328-WMR, slip of. at 1-2 (N.D. Ga. Feb. 26, 2019). And of course, the interpretation of Georgia statutes by federal courts is not binding on Georgia courts. *Innovative Clinical & Consulting Servs., LLC v. First National Bank*, 279 Ga. 672, 674 n.2 (620 SE2d 352) (2005).